[Steiner & Lobman v. Steiner Land & Lumber Co.]

# Steiner & Lobman *v.* Steiner Land & Lumber Co.

*Bill in Equity by a Corporation to have a Deed executed by its President set aside and cancelled.*

1. *Corporations; power and authority.*—Corporations created by an act of the legislature, or organized under the general laws of the State, can exercise only the powers expressly granted, the implied power to do all acts necessary to enable them to exercise the powers expressly granted, and such incidental powers as pertain to the purposes of their creation

2. *Same; same; stockholders incompetent to extend powers of corporation.*—The charter of a corporation, together with the general laws of the State of its creation, is the measure of its powers, and it is not competent for stockholders, by the adoption of by-laws or amendments thereto, to enlarge or extend the powers of the corporation beyond the scope authorized by its charter and by-laws; and in só far as the by-laws of the corporation, or the amendments thereto adopted by the stockholders, are inconsistent with the object of the corporation and the spirit and terms of its charter, or attempt to authorize the corporation to perform acts beyond its charter powers, they are void; and this is true, although such by-laws or amendments may be adopted with the unanimous consent of the stockholders.

3. *Same; same; power of corporation to indorse notes for accommodation.*—Although a corporation has implied power to make and indoise negotiable notes and bills in carrying on its lawful business, it has no power to make, indorse or accept, for the mere accommodation of others, notes and bills in which it has no interest, unless such power is expressly conferred, or is incidental to some other power expressly conferred.

4. *Same; same; same; when power not conferred.*—Where a corporation is granted the power "to indorse bonds, coupons or notes for others; to become security or indorser upon notes, bonds or mortgages," "to sell and dispose of, as it may deem best, any property that it may own or acquire," and the president is authorized to sell and dispose of any of the property of the corporation and to execute deeds therefor in the name of the corporation; and "to sign all notes or bonds as principal, security, or indorser which he may deem to the interest of the corpora-

[Steiner & Lobman v. Steiner Land & Lumber Co.]

tion," there is conferred on such corporation only the power to enter into contracts of suretyship or guaranty in matters relating to the business of the corporation, or to loan its credits by indorsement for the purpose of carrying on the legitimate objects of the corporation; but there is not conferred upon the corporation the general power to indorse, for the mere accommodation of others, notes and bills in which the corporation has no interest, and which are not, in any way, connected with the business of the corporation, nor is there given the authority to the president to convey the property of the corporation in payment of the supposed liability incurred thereby.

5. *Same; same; same; case at bar* —Where the original powers of a land and lumber company, conferred by its charter, in addition to those granted by the general laws, are to manufacture, buy and sell all kinds of lumber and wooden ware, to own and operate commissaries, to build, own and operate steamboats and railroads in connection with, and for the purposes of, carrying on its business, and to build, sell and lease houses, and to lease its lands, an amendment to the by-laws, by which it is attempted to give to the corporation the additional powers to "indorse bonds, coupons or notes for others; to become security or indorser upon notes, bonds or mortgages," "to sell and dispose of, as it may deem best, any property that it may own or acquire," and to give to the president authority to sell and dispose of any of the property of the corporation and to execute deeds therefor in the name of the corporation, and "to sign all notes or bonds as principal, security or indorser which he may deem to the interest of the corporation," is repugnant to the charter powers of the corporation, and, therefore, void, although adopted by the unanimous consent of the stockholders; and such attempted amendment does not confer upon the corporation the power to indorse for mere accommodation, notes of the president and certain stockholders given for their individual debts, incurred in relation to matters in which the corporation had no concern, nor does it authorize the president to convey the property of the corporation in discharge of the supposed liability thus incurred; and the indorsement by the president of such notes, in the name of the corporation and the excution of deeds by the president to discharge the supposed liability incurred by such indorsement, are without consideration and executed without authority, and are void.

6. *Same; amendment of by laws; when stockholders not shown to be represented by proxy.*—Where the interests of two stockholders in a corporation are represented generally by another stockholder, but the capacity in which the latter represents the two stockholders and the extent of his authority are not shown, the fact that, in a meeting of the shareholders of said corporation, for

9

[Steiner & Lobman v. Steiner Land & Lumber Co.]

the adoption of an amendment to its by-laws, said stockholder appears to have voted his individual stock only, it is not indicated that he did, or intended to, express the consent of those stockholders whom he represented to the adoption of such amendment; and such fact is not sufficient to show that the said two stockholders voted in favor of the amendment.

7. *Partnership; liability of decedent's estate to debts of partnership continued under the provision of will* —Where, by the terms of a will, a co-partnership, of which the testator was a member, is to be continued for a period not exceeding a given number of years after the testator's death, the surviving members of such co-partnership, continued in accordance with the direction of the will, can not, by their contracts made within the period limited for its continuance, bind the general assets of the estate of the deceased partner, but only those already invested in the business; and after the expiration of the period, the surviving members have no authority, by entering into new contracts, to create any liability against the decedent's estate.

8. *Same; when lands of decedent's estate not liable to debts of testator.* Where the personal assets of a decedent's estate are sufficient to pay his debts, such debts can not become a charge upon the lands of the estate in the possession of the heirs or devisees, or of their grantees.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellee against the appellants. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, upon the pleadings and proof, the chancellor rendered a decree granting the relief prayed for and ordering that the deeds executed by the Steiner Land & Lumber Company, by J. M. Steiner, President, to the defendants, be set aside and annulled. From this decree the defendants appeal, and assign the rendition thereof as error.

THOS. H. WATTS, for appellants.—The recovery of the Eppinger & Russell judgment against the executors of Joseph Steiner and the transfer of the same to Steiner & Lobman are fully proved. This debt has never been paid to Steiner & Lobman except by the conveyance of the lands. It was a valid and subsisting claim against the estate of Joseph Steiner which bound all the

[Steiner & Lobman v. Steiner Land & Lumber Co.]

property of the estate of Joseph Steiner. And when the complainant took the lands belonging to said estate, it took them subject to the claim of the creditors of said estate, Eppinger & Russell and others.—*Bell v. Craig*, 52 Ala. 215; *Nelson v. Murfee*, 69 Ala. 598. The executors, if they had not been estopped by their deed to the complainant, could have sold, and an administrator *de bonis non* could sell these indentical lands for the payment of the Eppinger & Russell debt and other like debts, notwithstanding the conveyance of the lands to the complainant (*Nelson v. Murfee*, 69 Ala. 598); and Eppinger & Russell had, therefore, a paramount claim to the lands which belonged to the estate of Joseph Steiner, which was superior to any right acquired by the complainant through a deed executed by the heirs of Joseph Steiner. Whatever rights Eppinger & Russell had to have these lands sold for the payment of their judgment, Steiner & Lobman had by virtue of the transfer to them of the said judgment.—*Vandiveer v. Ware*, 65 Ala. 606. As against this debt, or any other debt which the estate of Joseph Steiner owed, the transfer of the lands of his estate to a corporation, composed entirely of the heirs of Joseph Steiner, was a legal fraud and would not have prevented Eppinger & Russell, even had the debt been against the children instead of the estate of the father, from setting it aside as fraudulent. *Metcalf v. Arnold*, 110 Ala. 180.

The bill alleges that the deeds are purely without consideration. It is further alleged that they were executed in fraud of the rights of the complainant, and that the president had no authority to execute the said deeds. It must be concluded, upon the inspection of the record, that there is not the semblance of fraud anywhere shown. The burden of proving the allegations of the bill rests on the complainant, and in order to win, the *probata* and the *allegata* must correspond.— *Ware v. Jones*, 61 Ala. 288; *Bolling v. Munchus*, 65 Ala. 558; *Logan v. Edwards*, 66 Ala. 506; *Edwards v. Whyte*, 70 Ala. 365. The burden of proof in a bill seeking to set aside a contract for want of consideration is on the party affirming it. When the bill charges that there was no consideration for a contract, and the evidence shows that there was some consideration, though not perhaps

as much as would ordinarily have been demanded, the complainant must fail as heh as not sustained the burden of proof.—*Bolling v. Munchus*, 65 Ala. 558; *Edwards v. Logan*, 66 Ala. 506.

Generally a president of a corporation has no right to execute a deed to the corporate property, and we are aware that as a general proposition a president of a corporation has no right to endorse the notes of others in the name of the corporation and thereby bind the corporation. This case, however, is not of that nature. This case comes within the principle that if an agent is invested by his principal with apparent authority to carry on a certain course of dealing, the principal impliedly consents to be bound to any person who, in good faith, deals with such agent within the scope of the apparent authority so delegated.—Morawetz on Corporations, §§ 578–585; *Moore v. Robinson*, 62 Ala. 537. In this case, by the unanimous consent of all the stockholders of the concern, the president was given the power, without further authority from the stockholders or directors, to sell or dispose of any of the assets of the corporation, and this authority was recorded on the minutes of the corporation; was not only adopted at a meeting of the stockholders, but was also signed by the individual stockholders. Where it is shown, as in this case, that the stockholders have all consented that the president should exercise the powers given, the corporation is bound.—*Nelson v. Hubbard*, 96 Ala. 251.

The president, J. M. Steiner, under the authority given him by the resolutions and by the paper, had the right to act as he did. And Steiner & Lobman had the right to deal with such president in the reliance that he had the powers which the stockholders had unanimously given. The acts of the agent, when he acts within his authority, are the acts of the principal; and the principal is bound by such acts of the agent.—*Lyon v. Kent*, 45 Ala. 656. When certain powers are given to an agent, and third persons, with knowledge of said powers, deal with the agent, the principal is bound and an estoppel is created.—*Moore v. Robinson*, 62 Ala. 537.

The company can not set up that they have not complied with the law in giving the powers shown by the

[Steiner & Lobman v. Steiner Land & Lumber Co.]

resolutions.—Morawetz on Corporations, §§ 623, 653, 711, 752, 753, 754; *Lehman v. Warner*, 61 Ala. 455. The right to come into equity to set aside a contract must be based upon some accident, mistake or fraud. For whose fraud can the complainant come into equity? It must be the fraud of the other contracting party. It can not come into court to set aside a contract which it has made, and in which there is no fraud or concealment, or if there is any, the fraud and concealment is of its own agent. There must be fraud alleged and proved on the part of Steiner & Lobman. There is no fraud shown in the case at all.

A rescission of a contract can only be granted on precise allegations of fraud clearly charged and proved.— *Bell v. Lawrence*, 51 Ala. 160; *Bailey v. Litten*, 52 Ala. 282.

This transfer of the land to a corporation in consideration of the stock of said corporation can not be sustained against any creditor of the heirs, nor against any creditor of the estate of Joseph Steiner.—*Metcalf v. Arnold*, 110 Ala. 180; *Steiner L. & L. Co. v. King*, 118 Ala. 546.

J. C. RICHARDSON and LANE & CRENSHAW, *contra.*—To corporations formed under the general law (a) no power is granted to guarantee or endorse accommodation paper; (b) no power is granted to convey the corporation lands to pay the debts of a stranger; (c) no power is granted the president of the corporation to convey the corporation lands in payment of his own debts, or the debts of a partnership to which he belongs.—Code, § 1664; Acts of 1888-89, p. 108. Sovereign power alone can create a corporation.—*Ins. Co. v. C. A. & M. Asso.*, 54 Ala. 75; 1 Thompson on Corporations, 35, 502. When a corporation is created, it becomes a distinct entity, as distinct a juridic being as is an individual, and is entitled to hold property, (if not contrary to its charter) as absolutely as can an individual. Its estate is the same; its interest is the same; its possession is the same as that of an individual in property.—*Hollins v. Brierfield*, 150 U. S. 482; 1 Thompson Corporations, §§ 1, 2, 3. Being a mere creature of the law, it possesses no power not expressly granted or necessary to carry into effect the objects of its organization under its expressly granted powers. It

can exercise no authority not incidental to the effectuation of the objects of its organization.—*Smith v. Ala. Ins. Co.*, 4 Ala. 561 ; *Lime Works v. Dismukes*, 87 Ala. 344 ; *Simmons v. Troy Iron Works*, 92 Ala. 427 ; *Leggett v. N. J. &c. Co.*, 23 Amer. Dec. 728 ; 4 Thompson Corporations, 5638–39.

A person dealing with a corporation, or with its agent, is bound to take notice, (a) of the powers of the corporation, (b) of the powers and authority of its agents. A corporation can not convey its lands for the payment of the debts of a stranger, the same not being one of the legitimate objects of the corporation.—5 Thompson Corporations, § § 5973, 5974, 5980, 5985 ; 3 Thompson Corporations, § § 3995, 4014, 4016.

The president of a corporation has no power as such, without express authorization from the directors, to sell real property in the name of the corporation, and an instrument executed by him for such purpose, in the name of the corporation, and under its common seal, without the authorization of the directors, may be shown to be void, and the corporation is not estopped from denying the validity of an unauthorized contract made by its president, where it has never availed itself of the benefit of such contract.—*Standifer v. Swann*, 78 Ala. 88 ; *Norton v. Ala. Nat. Bank*, 102 Ala. 423 ; 4 Amer. & Eng. Encyc. of Law, 239 ; Cook on Corporations, p. 716, n. 1, 2, 3, 4 ; Warvelle's Vendors, 483, § 2 ; 4 Thompson Corporations, § 4951 ; *Tenn. & Coosa R. R. Co. v. East. Ala. R. Co.*, 73 Ala. 445 ; *Bliss v. Kaweah Canal Co.*, 65 Cal. 502 ; *Leggett v. N. J. &c. Co.*, 23 Amer. Dec. 728 ; *Lyndon Mill Co. v. L. L. & B. I.*, 21 Amer. St. Rep. 783, 788.

The corporation, *per se*, has no authority or power to become an accommodation endorser.—4 Thompson Corp., § § 4614, 4800, 5721, 5723, 5739, 5740 ; *Smith v. Insurance Co.*, 4 Ala. 561 ; *Wilks v. G. P. R. R. Co.*, 79 Ala. 187 ; *Bronwer v. Appleby*, 1 Sanf. (N. Y.) 158 ; *Bronwer v. Hill*, 1 Sandf. (N. Y.) 629 ; *Chambers v. Falkner*, 65 Ala. 454. The president of a corporation is without authority to bind the corporation as an accommodation endorser.—4 Thompson Corporations, § § 4613, 4800, 4961 ; *Bank of Genesee v. Patchin Bank*, 3 Kern. 309.

The president of a corporation can not render a cor-

poration liable as an endorser upon notes of a firm of which he, the president, is a member.—4 Thompson Corporation, § § 4613, 4614, 4617, 4622, 4632; *Perry v. Tuscaloosa &c. Co.*, 93 Ala. 370.

The personal representative of a deceased person has no right to sell the decedent's real estate, except for the purpose of paying debts; and if there are personal assets sufficient to pay the debts, he is without authority to touch the land for that purpose. If there are sufficient personal assets to pay the debts of the decedent, there can not be, under our statute, any order for the sale of his lands for their payment. The existence of debts to be paid is a jurisdictional inquiry in an application for the sale of lands for such purpose; and akin to this is another as well settled principle, that if the personal effects have been sufficient to pay the debts of the decedent, and they have been wasted by the personal representative, or applied to his own use, this fact furnishes no ground for the sale of the lands. The personal representative and his sureties must be looked to to make up the *devastavit*, and proof of such facts is a bar to any order of sale which may be asked for.—*Banks v. Speers*, 103 Ala. 436; *Lee v. Downey*, 68 Ala. 101; *Banks v. Speers*, 97 Ala. 562; *Handley v. Heflin*, 84 Ala. 603; 3 Brick. Dig., 464, § § 146, 150, 152.

BRICKELL, C. J.—The bill of complaint in this cause was filed by the Steiner Land & Lumber Co., and sought to have set aside and cancelled a deed alleged to have been executed in the name of the corporation by J. M. Steiner, its president, without authority and without consideration, by which several thousand acres of land were attempted to be conveyed to Steiner & Lobman, the defendants. Joseph Steiner died in January, 1889, leaving a will by which, after making provision for his widow and several special bequests, he devised and bequeathed the remainder of his property, consisting of many thousand acres of land and much personal property, to his eight children, J. M. Steiner, S. J. Steiner, R. E. Steiner, J. T. Steiner, Bernard Steiner, J. H. Steiner, Estelle Steiner, now Mrs. Otts, and Mrs. M. C. McGehee. At the time of his death he was a member of the firms of Joseph Steiner & Sons, J. M. Steiner &

Co., and Steiner Bros. & Co., and by the terms of his will he directed that the several partnerships should be continued after his death for a period not exceeding three years. The personal property of his estate, at the time of his death, was sufficient to pay all his debts, and in June, 1893, all his children, together with the firms of Steiner Bros. & Co. and Joseph Steiner & Sons, which were then composed of J. M. Steiner, S. J. Steiner, R. E. Steiner and J. T. Steiner, organized the Steiner Land and Lumber Co., the complainant, with a capital stock of $192,800, all of which was subscribed for and taken by the above named children and copartnerships, who paid for the same by conveying to the corporation their respective interests in the land which had been devised by said will. On June 8, 1893, in a suit in the Federal Court at Montgomery, wherein Eppinger & Russell were plaintiffs and J. M. Steiner, S. J. Steiner, R. E. Steiner and J. T. Steiner, as executors of the estate of the said Joseph Steiner, deceased, were defendants, a judgment was rendered in favor of Eppinger & Russell for the sum of $5,984.83, and upon an appeal to the Circuit Court of Appeals at New Orleans, Louis Steiner and Nathan Lobman, composing the firm of Steiner & Lobman, became sureties on the appeal bond. The judgment having been affirmed, judgment was rendered against said sureties and principals, which judgment with interest, amounting to $6,091.05, the said Steiner & Lobman paid on May 15, 1894, taking an assignment of the judgment to themselves. In the summer of 1893, after the organization of the Steiner Land & Lumber Co., and more than three years after the death of Joseph Steiner, the firm of Joseph Steiner & Sons became indebted to the Bradley Fertilizer Co. in the sum of $10,000, for which it gave two notes of $5,000 each, one indorsed by Steiner Bros. & Co., Steiner & Lobman and R. E. Steiner, and the other signed by Steiner Bros. & Co., and indorsed by Joseph Steiner & Sons, J. M. Steiner & Co., Steiner & Lobman, and R. E. Steiner. These notes were subsequently paid by Steiner & Lobman, but before they were paid, in May, 1894, Joseph Steiner & Sons gave to Steiner & Lobman two notes for $5,000 each, one dated back to December 18,

1893, and the other dated February 3, 1894, and payable, respectively, December 1, 1894, and January 1, 1895, and Steiner Bros. & Co. gave them their note for $899.31, dated April 23, 1894, and payable October 16, 1894. The first two of these notes were given to secure Steiner & Lobman against liability on their indorsement of the Bradley Fertilizer Co. notes, and the third was given in settlement of an indebtedness for goods sold by Steiner & Lobman to Steiner Bros. & Co., but at what date this indebtedness was incurred is not shown. Each of these three notes was indorsed : ''We guarantee and indorse the within notes till paid. The Steiner Land & Lumber Co. by J. M. Steiner, Pres't.'' On or before November 5, 1894; before these notes became due, Steiner & Lobman agreed with J. M. Steiner, president of the Steiner Land & Lumber Co., to accept, at an agreed valuation, a certain number of acres of land, particularly described, belonging to said corporation, in full payment and satisfaction of the three notes above described, indorsed by said corporation, and of the Eppinger & Russell judgment, the whole indebtedness amounting to $17,026.97, and on November 5, 1894, the said J. M. Steiner, in the name of the Steiner Land & Lumber Co., executed and delivered to Steiner & Lobman a deed conveying to them the lands agreed to be accepted in payment of said indebtedness. A few days thereafter Steiner & Lobman complained that the land was not worth the amount of said indebtedness, whereupon J. M. Steiner gave them a description of 1400 acres of additional land, and told them to insert it in the deed, which was done without any re-execution or re-acknowledgment of the deed. Several days later Steiner & Lobman, learning that the deed was invalid as to said additional 1400 acres, applied to J. M. Steiner for a new deed embracing all the land, including said 1400 acres, which deed was executed by J. M. Steiner in the name of the Steiner Land & Lumber Co. on November 23, 1894. Said notes were indorsed and said deeds executed in the name of the corporation by J. M. Steiner without the knowledge of the other directors and stockholders, and on November 28, 1894, the directors of the company, still having no knowledge of the indorsements, but having learned of the execution of the

[Steiner & Lobman v. Steiner Land & Lumber Co.]

deed, repudiated the transaction and directed the president to institute legal proceedings to have it annulled. It is now contended that the corporation had no power to indorse these notes, and that J. M. Steiner, as president, had no authority to indorse them or to execute the deeds in discharge of the liability incurred by the indorsements.

The original powers of the Steiner Land & Lumber Co. conferred by its charter, in addition to those granted by the general laws, were to manufacture, buy and sell all kinds of lumber, laths, shingles and wooden ware; to own and operate commissaries, and to build, own and operate steamboats and railroods in connection with and for the purpose of carrying on its business; to build, sell and lease houses, and to lease its lands. Afterwards a petition to the probate judge was prepared praying that the charter of the corporation be amended so as to give it additional powers, but this petition was never filed and the charter was not amended. This petition was signed "J. M. Steiner, S. J. Steiner, R. E. Steiner, Bernard Steiner, J. H. Steiner, Joseph Steiner & Sons, Steiner Bros. & Co." but was not signed by or for the other stockholders, J. T. Steiner, Mrs. Otts, or Mrs. McGehee. Subsequently, at a meeting of the stockholders of the company at which were present J. M. Steiner, S. J. Steiner, J. T. Steiner, Bernard Steiner and J. H. Steiner, held on a date which is not shown, but which was prior to the indorsement of said notes and the execution of said deeds, the substance of this petition was embodied in a resolution which was adopted as an amendment to the by-laws, by which it was attempted to give to the corporation the following additional powers: "First. To buy and own grist mills, gins and ginneries, and to conduct the business of same, charging toll therefor; to rent and to receive rent for the use of said grist mills and gins; to buy and sell coal; to own and operate a cotton compress; to buy and sell cattle; to own and operate an orange grove; to deal in wagons, carriages, harness and buggies; to buy and sell fertilizers; to own stock in, or to own entirely a plant for making gas and electric light, one or both; to own stock in, or the plant of, a water-works. Second.

To give its note in payment for anything it may do,. or to indorse bonds, coupons or notes for others ; to become security or indorsers upon notes, bonds or mortgages. Third. To sell and dispose of, for cash or credit, as it may deem best, any property that it may own or may hereafter acquire.'' The president was authorized by the amendment to sell and dispose of any of the property of the corporation, and to execute deeds therefor in the name of the corporation, without any further authority from the directors or stockholders, and ''to sign all notes or bonds as principal, security or. indorser, which he may deem to the interest of the corporation ; and to settle the question as to whether it is the interest of the corporation or not, his act of signing the notes or bonds as principal, security, or indorser is final upon the corporation.''

It is conceded by defendant that J. M. Steiner, as president of the corporation, had no special authority to indorse these particular notes or to execute these particular deeds ; but it is contended that the general power to indorse notes for others and to dispose of lands of the corporation in discharge of the liability thereby incurred, was vested·in the corporation, and the authority to execute this power was conferred on its president, by this amendment to the by-laws ; or if the attempt to amend the by-laws in this respect was void, that,. as shown by the signatures to the above mentioned petition and by the vote on said amendment, the.whole body of the stockholders had consented to the exercise of this power by the corporation, through its president, and that the act was one which the whole body of stockholders could authorize in the first instance, or ratify after performance. The general rule which prevails in this country is, that corporations created by an act of the legislature, or organized under the general laws, can exercise only the powers expressly granted, the implied power to do all acts necessary to enable them to exercise the powers expressly granted, and such incidental powers as pertain to the purposes of their creation. The charter of the corporation, together with the general laws of the State of its creation, is the measure of its powers, and the enumeration of these powers implies the exclusion of all others, except such as are incidental

[Steiner & Lobman v. Steiner Land & Lumber Co.]

or necessarily implied. The source of its powers is the legislature, and not its stockholders, and the unanimous consent of the latter can give it no right to engage in transactions foreign to the object of its creation.—*Central R. R. & B. Co. v. Smith*, 76 Ala. 579 ; *Chewacla Lime Works v. Dismukes*, 87 Ala. 344 ; *Ala. Gold Life Ins. Co. v. Cent. Agr. & Mech. Asso.*, 54 Ala. 77 ; *Thomas v. Railroad Co.*, 101 U. S. 82 ; 7 Am. & Eng. Encyc. of Law (2d ed.), 695 *et seq.* Hence, it is not competent for the stockholders by the adoption of by-laws or amendments thereto, to enlarge or extend the powers of the corporation beyond the scope authorized by its charter and the general laws. In so far as its by-laws are inconsistent with the object of the corporation and the spirit and terms of its charter, or attempt to authorize the corporation to perform acts beyond its charter powers, they are void, although adopted with the unanimous consent of the stockholders.—*Supreme Commandery, etc. v. Ainsworth*, 71 Ala. 436 ; 5 Thompson on Corp., § 5991 ; 5 Am. & Eng. Encyc. of Law (2d ed.), 95. Although a corporation has implied power to make and indorse negotiable notes and bills in carrying on its lawful business, yet it is well established, as a general rule, by the great weight of authority that it has no power to make, indorse or accept, for the mere accommodation of others, notes and bills in which it has no interest, unless such power is expressly conferred, or is incidental to some other power expressly conferred.—Green's Brice's Ultra Vires, 252, note ; 7 Am. & Eng. Encyc. of Law (2d ed.), 793 ; *National Park Bank v. Germ. Am. Mut. Warehousing, &c., Co.*, 116 N. Y. 281 ; *National Bank v. Young*, 41 N. J. Eq. 531 ; *Tod v. Kentucky Un. Land Co.*, 57 Fed. Rep. 47 ; *Hutchinson v. Sutton Mfg. Co.*, 57 Fed. Rep. 998. There are cases in which the indorsement of the paper of others has been upheld, but in each instance the transaction was but the means adopted to carry out the legitimate objects of the corporation and conduct its authorized business, made necessary or expedient by peculiar circumstances. No such circumstances existed in the present case. The indorsement was made purely for the accommodation of the firms of Joseph Steiner & Sons and Steiner Bros. & Co., composed of four of the

ten stockholders of the complainant corporation, and the corporation was in no way interested in the debt or in its being secured.  The effect of the indorsements and subsequent conveyance of the property of the Steiner Land & Lumber Co., in payment of the supposed liability incurred thereby, was simply the payment with the corporate property of the individual debt of the four stockholders of the corporation who composed the firms of Joseph Steiner & Sons and Steiner Bros. & Co. It results that the so-called by-law by which it is attempted to uphold the indorsements and conveyances, if it can be construed as an attempt to authorize the corporation to indorse, for the mere accommodation of others, notes and bills in which it has no interest, is repugnant to the charter powers of the corporation and therefore void, whether such indorsements are beyond the power of the corporation, or merely beyond the power of less than the whole body of stockholders.   It is insisted that, although the by-law may be void  as such—having been adopted by only five of the stockholders—yet the power to indorse for the mere accommodation of others, notes and bills in which the corporation has no interest, is one which the whole body of the stockholders may concur in authorizing, and that all the stockholders did concur in authorizing the exercise of this power by the corporation, thereby rendering valid the particular indorsement complained of.   It has has been held that, although an act or contract may be *ultra vires* of the corporation—one which the corporation has no power to perform or enter into—yet, if it is not opposed to public policy, or illegal *per se*, or *malum prohibitum*, it may be ratified and rendered binding by the entire body of the stockholders; and there is a *dictum* to this effect in *Jordan & Co. v. Collins & Co.*, 107 Ala. 576.   While all the stockholders may, by ratification, undoubtedly render binding acts done which are within the powers of the corporation, but *ultra vires* of its officers, or of a mere majority of its stockholders, the doctrine contended for cannot be maintained in those jurisdictions where the principle prevails that a corporation is forbidden to exercise any powers not expressly conferred, without totally abrogating the principle.   To permit the

stockholders to authorize acts beyond the power of the corporation to perform, or to render such acts binding by subsequent ratification, is simply to permit the usurpation by the stockholders of authority which resides in the legislature alone, and to make the stockholders, instead of the legislature, the source of corporate power. *Thomas v. Railroad Co.*, 101 U. S. 83 ; *National Trust Co. v. Miller*, 33 N. J. Eq. 155 ; *The Ashbury Railway Carriage & Iron Co. v. Riche*, L. R. 7 H. L. 653 ; Green's Brice's Ultra Vires, 550 ; 27 Am. & Eng. Encyc. of Law, 403. But it is not necessary in the present case, to decide this question, since it is conceded that, if it was within the power of the stockholders to authorize the corporation to bind itself by accommodation indorsements, the unanimous consent of all the stockholders is necessary to confer the authority, and the evidence fails to show such unanimous consent. The petition to the probate judge which was prepared, but never filed, for the purpose of procuring the amendment of the charter, and which, together with the vote on the amendment of the by-laws, is relied on to show the consent of all the stockholders to the exercise of this power, was not signed either by or for Mrs. Otts or Mrs. McGehee, who were stockholders of the company, nor was their stock voted in favor of the amendment of the by-laws. If appears that these two stockholders were represented generally—but not at the particular meeting at which the by-law was adopted— by J. M. Steiner, but the capacity in which he represented them, and the extent of his authority, is not shown. The fact that J. M. Steiner individually signed the petition, and that he voted his individual stock at the meeting at which the by-laws were amended, does not indicate that he did, or intended to, express the consent of those stockholders whom he represented to the exercise by the corporation of the power attempted to be conferred, even if he had the power to do so. Moreover, even if it be conceded that all the stockholders did consent to the adoption of the by-laws and to the exercise by the corporation of the powers attempted to be conferred thereby, we cannot construe the language used as authorizing the corporation to indorse, for the mere accommodation of others, notes and bills in which

[Steiner & Lobman v. Steiner Land & Lumber Co.]

it has no interest and which are not in any manner connected with the business of the corporation. The most liberal construction that can be given to the language by which it was attempted to confer the power "to indorse bonds, coupons or notes for others ; to become security or indorsers upon notes, bonds or mortgages," cannot extend the power beyond the entering into contracts of suretyship or guaranty in matters relating to the business of the corporation, or the loan of its credit, by indorsements, for the purpose of carrying out the legitimate objects of the corporation. Nothing but the most unequivocal language could justify us in holding that it was the intention of the stockholders to confer upon the corporation the general power, to be exercised in the discretion of the president, to indorse for the mere accommodation the notes of the president and other stockholders. given for their individual debts incurred in relation to matters in which the corporation had no concern, and to authorize the president to convey the property of the corporation in discharge of the liability thus incurred. We are of the opinion that J. M, Steiner, as president of the Steiner Land & Lumber Co., had no authority to indorse the notes of Joseph Steiner & Sons and Steiner Bros. & Co. in the name of the corporrtion, that no liability was incurred by the corporation by reason of said indorsements, and that the deeds which it is sought to have cancelled were executed without consideration and without authority, and are void.

There is nothing in the contention of counsel for appellants that the indebtedness evidenced by these notes, originally incurred by Joseph Steiner & Sons and Steiner Bros. & Co., was in reality a legal claim against the estate of Joseph Steiner, who, at the time of his death was a member of these firms, and therefore a charge, in equity on all the land of the Steiner Land & Lumber Co., and that this corporation, by the indorsement of the notes and conveyances of the land, was but securing and subsequently paying a debt which it had, in equity, assumed when it received a conveyance of the lands from the heirs of Joseph Steiner in payment of their stock. If the proposition were maintainable, it would be available only on an original bill, or on a cross-bill, and can not be asserted, under the answer in this case, as a de-

fense against the relief prayed for, except in so far as it is urged for the purpose of showing that the Steiner Land & Lumber Co. was in fact interested in the debt which it. attempted to secure, and that this fact brought the act of the president within the scope of the by-laws properly construed. Of the indebtedness, in payment of which the land was conveyed, $10,000 was that of Joseph Steiner & Sons and Steiner Bros. & Co., incurred more than three years after the death of Joseph Steiner, and the evidence fails to show when the indebtedness of $899.31 was incurred. By the terms of the will of Joseph Steiner these co-partnerships, of which he was a member, were to continue for a period not exceeding three years after his death. It is well settled that the surviving members of a co-partnership, continued under such a direction in the will of a deceased member, can not by their contracts, made within the period limited for its continuance, bind the general assets of the estate of the deceased partner, but only those already invested in the business, and that after the expiration of the period, they have no authority, by entering into new contracts, to create any liability against the estate.— *Edgar v. Cook*, 4 Ala. 590 ; *Smith v. Ayer*, 101 U. S. 320 ; *Burwell v. Mandeville's Exrs.*, 2 How. (U. S.) 576 ; *Pitkin v. Pitkin*, 7 Conn. 307. As to the Eppinger & Russell judgment, which constitutes the remainder of the indebtedness, this was clearly founded upon obligations incurred by Joseph Steiner in his life-time, and was a claim against the estate. But it is admitted, by an agreement of counsel shown in the record, that the personal assets of the estate of Joseph Steiner were sufficient to pay all his debts, and this being the case, it is clear that said debts did not become a charge upon the lands of the estate in the possession of the devisees or of their grantees. Heirs and devisees who have received the real property of the estate, are not liable for the debts of the estate unless the personal property of the estate is not sufficient to pay the debts.—*Banks v. Speers*, 103 Ala. 436 ; Woener's Am. Law of Admin., § 576.

Affirmed.