# Jackson Lumber Co. *v.* Trammell.

Assumpsit.

(Decided February 15, 1917. 74 South. 469.)

1. **Evidence; Judicial Notice; Master and Servant.**—The court judicially knows that in a saw-mill enterprise much machinery is used, that the employment of laborers is necessary to its operation, and that accidents are likely to occur.

2. **Corporations; Powers; Conformity with Business Purposes; Ultra Vires Acts.**—Employment of a physician by a sawmill corporation to look after the health of its employees is not in violation of Const. 1901, section 233, since it merely is a means of executing its express powers.

3. **Pleading; Demurrer; Sufficiency.**—In an action for compensation by a physician where the replication contained two grounds, one of which was valid, and demurrer was interposed to the entire replication, it was properly overruled.

4. **Costs; Cost Bond; Time for Filing.**—Under Code 1907, § 3690, providing that if cost bond be not given at or before the next term of court after the term at which it is required, the suit must be dismissed, where a plaintiff removed from the state and was required to file a cost bond and filed one in time limited to $150, it was not error for the court to allow him to file sufficient security at any time during the term, especially where he filed a sufficient bond on the second day of the term.

5. **Contracts; Breach; Executed Contract; Pleadings.**—In an action for money due on a contract fully executed the same particularity of averment is not necessary as where the suit is for the breach of an executory contract.

[Jackson Lumber Co. v. Trammell.]

6. **Contracts; Actions; Pleading and Proof.**—Where one suing on an employment contract alleged that the compensation agreed upon was $200 per month, there was no fatal variance where his testimony showed that it was agreed that he should be paid $150 a month, and that $50 additional should be retained from his salary as security for faithful performance of his work.

7. **Evidence; Judicial Notice; Location and Population.**—Courts will take judicial notice of the location and population of a particular community.

8. **Appeal and Error; Scope of Review; Fact Questions; Weight of Evidence.**—The rule that the court on appeal will not reverse for insufficiency of evidence where the evidence was in direct conflict is still in force, and unaffected by Acts 1915, p. 722, providing that no presumption in favor of the correctness of the judgment of the court appealed from shall be indulged by the appellate court.

9. **Trial; Misconduct of Counsel; Remedy.**—To put the trial court in error with respect to improper remarks of counsel, a ruling must be appropriately invoked promptly upon the utterance of such remarks.

10. **New Trial; Grounds; Improper Argument of Counsel.**—In an action against a corporation for compensation as a physician for its employees, argument of counsel as to disparity of wealth of parties and alleged improper methods of the corporation was sufficient to require new trial.

(McClellan, J., dissenting.)

APPEAL from Covington Circuit Court.

Heard before Hon. A. B. FOSTER.

Action by R. H. Trammell against the Jackson Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded on rehearing.

Suit by appellee against appellant to recover a sum claimed by the plaintiff to be due under a contract made between the plaintiff and the defendant on May 1, 1903, and terminating May 1, 1913, by the terms of which the plaintiff was engaged to attend the employees of the defendant company and render them medical and surgical aid and attention during the time the contract was in force, and for which services plaintiff was to receive the sum of $200 per month. The case was tried on counts C, D, and E, which set up the substance of the contract, and the performance of the required services by plaintiff, and also on the common counts. The defendant interposed pleas of the general issue, payment, ultra vires, the statute of limitation, and the statute of frauds.

To the plea of ultra vires the plaintiff filed three replications, the first of which alleged in substance that the defendant is a corporation chartered under the laws of Alabama and empowered to operate sawmills and to manufacture lumber; that it has a

number of sawmills and employs a large number of hands in the carrying on of its business; that the plant is situated some distance from any other town or thickly settled community; that the plant is run by machinery, and that accidents are liable to occur; that the comfort, protection, and well-being of the employees, and as an auxiliary of the main enterprise of the corporation, plaintiff was engaged as physician and surgeon, at a fixed salary, as set forth in the complaint, and that plaintiff did serve defendant under said contract for a number of years. The second replication was in substance the same as the first; and the third contained substantially the same averments as replications 1 and 2, with the additional averment that under this system of protection the defendant company received monthly contributions from its employees, which money went into the defendant's treasury, and was retained by it, and that this arrangement, together with the fact of plaintiff's employment to give medical attention, was known to and ratified by the defendant corporation.

To the plea of the statute of limitation the plaintiff replied that partial payments were made on the matters claimed in said counts, within the period of the statute of limitation.

To the sixth plea, to the effect that the contract sued on was not to be performed within one year from the date thereof, and was not in writing, the plaintiff replied that the contract was to continue so long as both parties were satisfied, no definite period being fixed for its termination, but that it could be terminated by either party at pleasure.

On the trial of the cause plaintiff insisted that he was employed to give medical and surgical attention to the employees of the defendant company at a salary of $200 a month, and that it was agreed that $50 per month of this salary should be retained by the defendant until the termination of the contract; that his work under the contract (which was made with the general manager of the company) began May 1, 1903, and continued until May 1, 1913; that payments were made to him monthly, and usually in the sum of $150, but on two occasions the monthly payment was in the sum of $175, and on four other occasions in the sum of $200; that under the contract his services were to continue until the company became dissatisfied; and that no payments had been made on the $50 per month held back, except as stated above. Plaintiff also testified to some offer of settlement.

[Jackson Lumber Co. v. Trammell.]

Defendant offered proof to show that the employment of plaintiff was at a fixed salary of $150 per month, which had been fully paid, and that nothing more was due him. Plaintiff's account with defendant and checks payable to him by the company were offered in evidence.

On the submission of the cause to the jury a verdict in the sum of $6,678.50 was rendered, and judgment entered accordingly. From this judgment the defendant appeals.

The bill of exceptions shows the following:

During the argument of counsel for plaintiff on the question of the admissibility of the answer to interrogatory 5, the jury being present, the counsel stated to the court in the presence of the jury that the answer to said interrogatory, would disclose that the Jackson Lumber Company had collected fees from its employees, and had to its credit on this system of collections over $7,000, which belonged to the plaintiff, and further that one item of the account shown on it was $300 paid to W. O. Mulkey, attorney for the Jackson Lumber Company. And counsel for the defendant protested at that time against the statement thus made to the court in the presence of the jury as being improper.

During the argument of the case before the jury by the plaintiff's counsel, in the opening argument, he stated that there was shown that the Jackson Lumber Company collected from its employees a large sum of money for the payment of the plaintiff, and that the plaintiff was entitled to it. The defendant objected to the remark, and moved the court to exclude it, and the court excluded the remark, stating that the argument was not proper, whereupon the counsel for plaintiff stated that he did not wish to make an improper argument, and did not want to do wrong. Also in the opening argument, attorney for plaintiff stated that the Jackson Lumber Company, the defendant, was a large and powerful corporation, and that a judgment against it could not hurt it.

In the concluding argument, which was made by Hon. W. L. Parks, he often stated to the jury that the defendant was a large and powerful corporation, and on one occasion that the plaintiff was a poor man. The defendant objected to the latter statement, and the court sustained the objection without comment, whereupon counsel for plaintiff then stated that he would withdraw the statement as to plaintiff being a poor man, and asked the jury to look at him and determine for themselves his condition.

Counsel for the plaintiff, in his closing argument, stated that the plaintiff had an honest contract, and was entitled to the money he is suing for, and the defendant comes forward with the Jackson Lumber Company's methods to defeat an honest claim. Defendant objected as to the statement of the Jackson Lumber Company's methods, and the court sustained the objection. And then the attorney for the plaintiff stated that he would add "according to the evidence in this case.'

W. O. MULKEY and STEINER, CRUM & WEIL for appellant. WILLIAM L. PARKS and J. M. PRESTWOOD for appellee.

GARDNER, J.—The plaintiff (appellee here) seeks to recover for services rendered as a physician, to the employees of the defendant company, under contract for a fixed salary. The defendant is engaged in the operation of a sawmill and the manufacture of lumber at Lockhart, Ala., and as one of the defenses interposed pleaded that it is a corporation, and was not authorized by its character to so contract for the services of a physician.

The substance of the plaintiff's first replication is set out in the statement of the case, and is to the effect that the defendant company, being engaged in the sawmill business in which it is necessary to engage a large number of operatives, and in which accidents are liable to occur, recognized that the comfort and health of its employees is an aid to such company in the accomplishment of the ends for which it was organized; and that a physician employed to attend them in case of sickness or accident is in a sense an auxiliary of the main enterprise of the corporation. The action of the court in overruling the demurrer to this replication is the first question pressed upon our attention by counsel for appellant.

The subject of ultra vires has been much discussed, and is one upon which great diversity of opinion has been expressed. As said by another: "There is no clearly defined principle of law that determines whether the particular act is ultra vires or intra vires. The courts are becoming more liberal, and many acts which 50 years ago would have been held to be ultra vires would now be held to be intra vires."

The question for consideration is whether the contract with the plaintiff was within the implied or incidental powers of the

defendant corporation. Mr. Cook, in his work on Corporations (vol. 2, p. 683), after calling attention to the fact that an ultra vires act is one beyond the express and implied powers of a corporation, states that an intra vires act is one which is within the express or implied powers of either the board of directors or a majority of the stockholders, and that an act is intra vires if it can be legally carried out by the directors or a majority of the stockholders. The author further says: "Intra vires acts are frequently spoken of as matters concerning the 'internal management' of the corporation."

In the same volume (section 681) he states that the implied powers of a corporation are not limited to those which are indispensably necessary, but include those which are appropriate and suitable to carry out the express powers. A like rule is also declared by the Supreme Court of Wisconsin, in *Madison Plank Road Co. v. Watertown Co.*, 5 Wis. 173, in the following language: "The rule is, that if the means employed are reasonably adapted to the ends for which the corporation was created, they come within its implied or incidental powers, though they may not be specifically designated by the act of incorporation."

To similar effect is the language of the Supreme Court of Maine, in *Flaherty v. Portland, etc., Soc.*, 99 Me. 253, 59 Atl. 58: "The implied powers of a corporation are not limited to such as are indispensably necessary to carry into effect those which are expressly granted, but comprise all that are necessary, in the sense of being appropriate, convenient and suitable for such purpose, including the right of a reasonable choice of means to be employed.—Cyclopedia of Law, vol. 10, p. 1097; 1 Cook on Corporations, § 3."

In the case of *Colorado Spgs. Co. v. Am. Pub. Co.*, 97 Fed. 843, 38 C. C. A. 433, it was said that the acts of a corporation are not ultra vires if "they had a natural and reasonable tendency to aid in the accomplishment of the objects for which the corporation was created." As illustrative of this rule the Supreme Court of Illinois (*Cen. Lbr. Co. v. Kelter*, 201 Ill. 503, 66 N. E. 543) held that a corporation organized for "the purchase and sale of lumber, and all adjuncts for carrying on a general lumber business," has the implied power to execute a bond, for the performance of a building contract, on the part of a contractor, if the bond is executed for the purpose of securing a sale of lumber to the contractor. See, also, Green's Brice's Ultra Vires, p. 86

et seq. By these quotations from other jurisdictions we do not intend to indicate approval of all that is therein said, but refer thereto as by way of illustration only.

The language of our own cases is not out of harmony with the general principles as above referred to. In *Chewacla Lime Works v. Dismukes & Co.,* 87 Ala. 344, 6 South. 122, 5 L. R. A. 100, the following words, pertinent to this question, are used: "Any transaction * * * not necessary or proper to enable the corporation to answer the purposes of its creation is void."

See, also, *Steiner & Lobman v. Steiner Land Co.,* 120 Ala. 128, 26 South. 494; *U. S. Fdy. Co. v. Bailey,* 194 Ala. 261, 69 South. 825.

In *Steiner v. Steiner Land Co.,* 120 Ala. 128, 26 South. 494, is the following:

"The general rule which prevails in this country is, that corporations created by an act of the Legislature, or organized under the general laws, can exercise only the powers expressly granted, the implied power to do all acts necessary to enable them to exercise the powers expressly granted, and such incidental powers as pertain to the purposes of their creation."

We have not overlooked the recent case of *A. G. S. R. R. Co. v. Loveman Co.,* 196 Ala. 683, 72 South. 311, where, in discussing the question of ultra vires, the following expression was used: "Expressly authorized by the charter or is necessarily incident to the powers for carrying out the objects of the charter."

By the use of the words "necessarily incident," this court did not intend to indicate that such action should be indispensably necessary to the purposes of the corporation, but only that they should be necessary in the sense of being appropriate and suitable for the purposes for which the corporation was organized.— 10 Cyc. 1079.

Even in regard to municipal corporations this court has held that such corporations can exercise those powers expressly granted, and those, also, "necessarily or fairly implied in or incident to the powers expressly granted."—*Cleveland Co. v. Greenville,* 146 Ala. 559, 41 South. 862.

(1) The defendant was engaged in the operation of a sawmill. We judicially know, as it is a matter of common knowledge, that in such an enterprise much machinery is used, that the employment of laborers is essential to its operation, and that accidents are likely to occur. Without laborers the corporation

[Jackson Lumber Co. v. Trammell.]

would be powerless to carry out the purposes of its creation. It is therefore necessarily interested in the welfare of its employees. Much depends upon their health and their contentment in the service, and to conserve their physical comfort tends to their efficiency, and the greater their efficiency the greater the profits to the defendant company. It could hardly be denied that a private corporation engaged in the manufacture of lumber could, if it saw fit, erect houses for the use of its employees and surround them with such sanitary conditions as would tend to promote their general and physical welfare, even though its charter might contain no such provisions. These are matters which relate to what might be termed the "internal management" of the corporation, with which, in the absence of fraud or unfair dealing, the courts as a rule do not interfere.

(2) The employment of a physician to look after the health of the employees is but in line with the suggestions above made, and concerns one of those questions of internal management which we think may be fairly incidental to the objects of the corporation's creation. By contracting for such medical attention the corporation is not engaging in any business other than that expressly authorized in its charter (section 233, Constitution 1901), but merely adopts this as one of the means of executing its express powers (and as to such means the corporation must be held to have a right of reasonable choice), which we think can be said in this instance to have had a very natural and reasonable tendency to aid in the accomplishment of the purpose for which it was created. We therefore conclude that the demurrer to the replication was properly overruled.

(3) The third replication contains substantially the same averments as those above noted, and, in addition to these, matters are alleged to show ratification of and acquiescence in the employment of plaintiff on the part of the manager and other officers of the corporation. It may be conceded, for the purposes of this case, that under the rule in this state, if the act was ultra vires the corporation it could not be the subject of ratification.— *A. G. S. R. Co. v. Loveman Co., supra; Chewacla Lime Wks. v. Dupree, supra.* The demurrer was addressed to the replication as a whole, however, and that portion of the replication which we have just discussed was not subject to demurrer. Under such circumstances, therefore, the trial court will not be put in error for overruling the demurrer interposed to the replication

as a whole.—*Ansley v. Bank of Piedmont,* 113 Ala. 467, 21 South. 59, 59 Am. St. Rep. 122.

The replication to the plea of the statute of limitations alleges that partial payments were made on the matters set forth in the plea, in each of the years from 1903 to 1913, inclusive. The demurrer to this replication was properly overruled.—*Steele v. Steele,* 64 Ala. 438, 38 Am. Rep. 15.

(4) After suit was brought and before the trial was had, the plaintiff removed from the state, and motion was made that he be required to furnish security for the costs, which motion was granted. Before the next term of the court plaintiff executed bond with security for the costs, but the amount of the bond was limited to $150. At the next term, defendant moved to dismiss the cause for plaintiff's noncompliance with the order of the court as to giving security for costs. The court held that the bond was insufficient, but that plaintiff had "during the term," within which to comply with the said order. The motion was made on Monday, the first day of the term. On the day following the case was again called for trial, when plaintiff tendered to the clerk proper security for the costs, which was duly approved. Defendant's motion to strike the cause from the docket was overruled. Section 3690, Code 1907, provides that if such security be not given at or before the next term of the court, the suit must be dismissed. Here the security was given in time but in insufficient amount, and plaintiff was allowed by the court to file sufficient security during the term, which was done on the second day of the term. In this there was no reversible error.

(5) It is insisted that the affirmative charge was due defendant because of a variance between the contract sued on and that disclosed by the evidence. It is to be noted that the suit is for the recovery of money due on a contract fully executed, and that in such a case the same particularity of averment is not necessary as where the suit is for the breach of an executory contract.—*Vincent v. Rogers,* 30 Ala. 471; *Boylston v. Sherran,* 31 Ala. 538; *Jones v. King,* 81 Ala. 285, 1 South. 591; *Birmingham & Atl. Ry. v. Maddox,* 155 Ala. 292, 46 South. 780.

(6) In counts C, D, and E, the plaintiff sought recovery for a balance due under contract with the defendant, for services fully performed, alleging that the compensation agreed on was $200 per month. Plaintiff so testified on the trial; but he also

stated that, while the agreement was to pay $200, it was further agreed that $50 per month of this sum was to be retained by defendant, from the beginning of the employment until its termination, as a guarantee of efficiency in services to be rendered, and that this balance should be paid when the contract terminated. The variance here insisted on relates more to the mode of payment than to any essential term of the contract itself. The suit was for recovery on a contract fully performed, and we are of the opinion that the variance urged does not suffice to reverse the court below for the refusal of the affirmative charge.

It is further insisted that the defendant was due the affirmative charge for that the plaintiff failed to offer proof to establish the averments of his replication. While the evidence was meager in this respect, we are not persuaded that it was so lacking in proof to support the material averments of the replication as to withdraw the same from the jury's determination. Some of the matters alleged are of common knowledge, such as that, in the operation of a sawmill, the employees are subject to accident in the use of the machinery.—16 Cyc. 876.

(7) The evidence showed that the defendant corporation is engaged in the manufacture of lumber, and to that end is operating a sawmill at Lockhart, Ala.; and the courts take judicial knowledge of the location, as well as of the population, of the particular community. While the evidence was silent as to the number employed at this mill at Lockhart, it was sufficient to afford the jury the inference that a large number of laborers were engaged in defendant's employ. The question is, then, reduced to one of law, as to whether the defendant was in the exercise of an implied or incidental power in the employment of plaintiff as a physician to attend these laborers and their families. There was no error in the refusal of the affirmative charge on this theory.

(8) Motion was made for a new trial, and the ground urged upon us here is that the verdict was contrary to the weight of the evidence. The trial court had the witnesses before him and the advantage of observing their manner on the stand. The familiar rule under these circumstances, announced in *Cobb v. Malone*, 92 Ala. 630, 9 South. 738, is still in force and unaffected by recent legislative enactment.—Acts 1915, p. 722; *Hackett v. Cash*, 196 Ala. 403, 72 South. 52; *Finney v. Studebaker*, 196 Ala. 422, 72 South. 55; *Hatfield v. Riley, infra*, 74 South 380.

18—199

Under the rule announced in *Cobb v. Malone, supra,* it is not the duty of the court to set aside the judgment merely because the verdict of the jury may not correspond with its opinion as to the weight and sufficiency of the evidence. A discussion of the testimony is unnecessary. It has been carefully examined, and we are not persuaded that a reversal of the cause should be awarded on the action of the court in denying the motion for a new trial.

(9) Objection to statements of counsel for plaintiff made in argument were interposed by the defendant and sustained by the court; but it is insisted that the statements were prejudicial, and the court should have gone further, and more promptly removed any impression which such argument might have made on the minds of the jury. No action of the court to this end was invoked by the defendant.

The question here involved was fully discussed in *B. R. & P. Co. v. Gonzalez,* 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543, and in the light of the rule there announced we are not persuaded that the judgment should be reversed on account of the matters here complained of.

We find no reversible error in the record, and the judgment is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. McCLELLAN, J., dissents, on the ground that the court erred in overruling the demurrer to the third replication.

### ON REHEARING.

GARDNER, J.— (10) It is urgently insisted by counsel for appellant upon this application for rehearing that reversal of the cause should be rested upon the denial of the motion for a new trial. This insistence is based upon two grounds: First, because the verdict was contrary to the great weight of the evidence; and, secondly, on account of improper argument of counsel for the plaintiff upon the trial of the cause before the jury, which argument appears on page 76 of the record, and will be set out in the report of the case.

This court has held that no horizontal rule can be laid down embracing questions of this character, but each case must be

[Jackson Lumber Co. v. Trammell.]

determined upon the situation there presented, and due consideration should be given to the "general atmosphere" of the particular case.—*B. R., L. & P. Co. v. Gonzalez*, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; *Moulton v. State, infra,* 74 South. 454.

In view of the result which has been reached upon this application, we deem it proper to enter into no discussion of the evidence in the cause. It has been carefully considered in connection with the argument of counsel to which reference is made above. Upon a reconsideration of this question, the court has reached the conclusion that a new trial should have been awarded the defendant, and that for its denial the judgment should be reversed. The writer and Chief Justice ANDERSON entertained a contrary view and so voted, but a majority of the court, consisting of Justices MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, are of the opinion that a new trial should be granted, we are not inclined to record a dissent, and have concluded to yield our view upon the question to that of the majority.

The application for rehearing is granted, the judgment of affirmance set aside, and the cause is reversed and remanded.

Reversed and remanded.

McCLELLAN, J.— (concurring).—Upon original submission a majority of the court affirmed the judgment below. I was unable to give my assent to that conclusion because, it seemed to me, error was committed by the trial court in overruling defendant's (appellant's) demurrers to replications interposed by the plaintiff to plea 3. On rehearing the order of affirmance has been annulled and a reversal of the judgment entered, but, as appears, upon a different finding of error from that which, in my opinion, underlay the judgment below.

The complaint as amended contained some of the common counts, and also special counts declaring on a contract of employment between plaintiff and defendant, whereby plaintiff was to serve and did serve defendant as a physician to and for its employees, at an agreed compensation. Among the common counts was one (lettered A) whereby the claim was for money received by the defendant for the use of the plaintiff. It does not appear, so far as I have been able to discover, what disposition, if any, was actually made of this count. Whether the issue tendered by it was, in fact, submitted to the jury is not shown. The pleas, originally filed on November 17, 1913, do not appear to

have been refiled to the amended complaint, though it is fairly certain from the whole record that the trial was had on issues attributable alone to matters set forth in the original pleas. Plea 3 was thus framed: "The defendant was without authority to enter into the contract, upon which the plaintiff bases his right of action, the defendant being a corporation and not having authority by its charter to employ a physician, or make the contract which is the basis of the suit." ·

No demurrer to this plea was filed. For the reasons the writer set down in his individual opinion in *Marengo Abs. Co. v. Hooper,* 174 Ala. at pages 507-509, 56 South. 580 (the views there expressed being based in part upon decisions of this court in *Savage v. Walshe,* 26 Ala. 619, 632; *Broad Street Hotel Co. v. Weaver,* 57 Ala. 26, and also Thompson on Corp. § 1237, and *S. & M. R. R. Co. v. Anderson,* 51 Miss. 829, 834), this plea was but the legal conclusion, the legal deduction, of the pleader, and was, in my judgment, subject to the demurrer on that account (16 Ency. Pl. & Pr. p. 564; 12 Ency. Pl. & Pr. p. 1024, et seq.; 31 Cyc. p. 49, et seq.; *Life Ass'n v. Cook,* 20 Kan. 19; *Chewacla Lime Works v. Dismukes,* 87 Ala. 344, 346, 6 South. 122, 5 L. R. A. 100; 10 Cyc. p. 1096). Reference is thus made to the sufficiency of this plea, not because any error is predicated of the ruling with respect to its sufficiency, but because subsequent pleading of which review is required illustrates the at least confusing effect of permitting the defendant to assert ultra vires as a conclusion of law, instead of exacting the appropriate pleading of the corporation's charter from which alone its powers and their extent may be judicially ascertained and determined. While evidence may be taken by the court itself to advise its judgment in performing the court's function in interpreting and construing the corporate charter, the inquiry of corporate power to do an act or to consummate a contract can never be considered or tried on evidence presented to the jury. The question, when properly raised, is purely one of law for the court and not of fact for the jury.—Authorities noted in 174 Ala. pp. 507-509, 56 South. 580. ·

To plea 3, above quoted, the plaintiff interposed special replications only. No general replication, no general traverse of that plea, was filed.—Code, § 5338. According to elementary rules of pleading the effect of the interposition of special replications only to plea 3 was to confess the averments of plea 3, and to relegate and confine the special replications to the category of plead-

[Jackson Lumber Co. v. Trammell.]

ing in confession and avoidance of the matter undertaken to be set forth as a bar to recovery by plea 3.—*Culberson v. Amer. Trust Co.,* 107 Ala. 457, 463, 19 South. 34; *Highland Avenue R. R. Co. v. South,* 112 Ala. 642, 653, 654, 20 South. 1003; *Bridges v. Tenn. Coal Co.,* 109 Ala. 287, 293, 19 South. 495; *Zirkle v. Jones,* 129 Ala. 444, 449, 29 South. 681; Code, § 5338; 6 May. Dig. pp. 721, 722.

Since it is settled in this jurisdiction by numerous decisions that a corporation is never estopped to assert ultra vires, even though a benefit has accrued under the engagement involved, it is manifest that the special replications cannot be soundly interpreted as undertaking to set up an estoppel of the corporation to plead ultra vires against a recovery on counts declaring or based upon an express contract between the plaintiff and the defendant, especially when as is entirely clear, the failure to interpose any character of denial of the averments of plea 3, and the interposition of special replications alone, effected, as a matter of law, the confession that the corporation was without authority under its charter to engage as the special counts of the complaint declare. It is further obvious that the special replications, in so far as their effect may be attributed an effort to avoid plea 3 as an answer to the special counts declaring on the contract, were but an effort to set up in avoidance of the effect of that plea acts of the officers of the corporation to estop the corporation from asserting its confessed want of power to contract as the special counts aver. Of course, it is not possible, under our decisions, for any act of an officer to bind the corporation to the performance of an engagement to make or effect while the corporation is without power to do. The demurrers to the replications taking this objection thereto were due to be sustained; and the grounds specifying the further objection that officers of a corporation are without power to ratify the ultra vires act of the corporation were likewise well taken. I have not overlooked the suggestion in brief for appellee, in response to the appellant's application for rehearing, that plea 3 should be interpreted as averring the absence of express power in this corporation to make the contract declared on in the special counts of the complaint; this as the premises for a contention that such a limitation of the plea's averment would serve to justify and to vindicate the plaintiff's replications as asserting the existence and the exercise of the incidental powers described in the replications.

I cannot read plea 3, above quoted, to any such limited effect. It is broad enough in its averments to deny the existence of all power, express, incidental, or implied, to make the contract declared on.

Under our practice, a count, plea, or replication is an entity in pleading, and must be construed accordingly. A pleader, except in rare cases, may and does by the force of his allegation thereof constitute that material which otherwise might be immaterial. See *Highland Avenue R. R. Co. v. South,* 112 Ala. 642, 20 South. 1003. If the expression in *Bain v. Wells,* 107 Ala. 570, 571, 19 South. 774 (sixth headnote), can be regarded as a deliberate ruling by the court that a demurrer will lie to a part of a plea, it is manifestly unsound as shown by repeated adjudications here; among which see *Ansley v. Bank,* 113 Ala. 477, 478, 21 South. 59, 59 Am. St. Rep. 122—a decision opposed in this particular to *Bain v. Wells, supra,* on which counsel for appellant there relied as shown in the reproduction of the brief on page 473 of 113 Ala. The method for eliminating immaterial matter from a plea or replication, is by motion to strike.—*Ansley's Case, supra; Walter v. Railroad Co.,* 142 Ala. 474, 482, 39 South. 87, among others.

Recurring to count A, as before stated: If it appeared from the record that plea 3 had been interposed to count A, there might have been ground for the contention that the adverse ruling on the appellant's demurrer to the replications was error without injury, though this is, in my opinion, very doubtful. It appears from the defendant's answers to interrogatories, offered in evidence, that the fund out of which a doctor to serve the employees of the defendant was to be paid was created through the payment to the defendant of monthly installments contributed by the employees, and was for the purpose of affording the employees medical attention, etc., while in the service of the defendant. The fund thus created was a trust fund, having impressed upon it the limitation fixed by the purpose inspiring its contribution and payment to the defendant. "Where one man has money in his hands, which ex equo et bono belongs to another, if there be no contract, modifying or controlling the general liability to pay, the person entitled to the money may recover in an action for money had and received to his use."—Third headnote to *Hitchcock v. Lukens,* 8 Port. 333; *Davis v. Orme,* 36 Ala. 540. If the express contract of employment declared on

[Mayo v. Mayo.]

in the special counts or in the common counts based upon an·express contract was void because the corporation was without power to make the contract with the plaintiff, it would seem that the law would imply a promise on the part of the agent—corporation—to deliver that much of the fund to which on a quantum meruit the plaintiff was entitled, thus eliminating from consideration or availability as a defense the doctrine of ultra vires. The decision of this court in *Westinghouse Machine Co. v. Wilkinson,* 79 Ala. 312, may be distinguished upon the ground that there the action was on the contract, and not expressed in the common count which, in its turn, is a· declaration, in effect, upon a promise implied by law, not created by the express agreement of the parties.

In reviewing this record, I am unable to find support in the evidence for averments made material by their incorporation in the replications. I am not able to exercise judicial knowledge to supply the deficiency in the proof of these averments.

Upon the. considerations indicated, I concur in the reversal of the judgment.