OXFORD vs. THE STATE.

[INDICTMENT FOR RECEIVING STOLEN GOODS.]

1. *Sufficiency of verdict.*—Under an indictment charging the defendant, in two separate counts, with larceny and with receiving stolen goods, a verdict of " guilty as charged in the second count of the indictment, to-wit, of receiving stolen goods knowing them to be stolen," is a general verdict, and sufficient to support a conviction under the second count.

2. *Larceny by slave of master's goods.*—A slave may commit larceny by feloniously taking his master's goods.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. ROBERT DOUGHERTY.

THE indictment in this case contained two counts; the first charging the prisoner, Mary Oxford, with the larceny of two hundred pounds of bacon, the personal property

of one Samuel J. Sellers, alleged to have been stolen "from a store-house, dwelling-house, smoke-house, kitchen or shop;" and the second charging that she feloniously received the bacon, then lately stolen, knowing that it had been feloniously taken and carried away. " On the trial," as the bill of exceptions states, "the testimony tended to show, that the bacon was stolen, taken, and carried away by a negro boy, named Dick, the property of Samuel J. Sellers, from whom the bacon was stolen; that it was delivered by said negro to the defendant, and concealed by her. There was, also, other evidence in the case. The prisoner asked the court to charge the jury, 'that if the bacon was stolen, taken, carried away, and delivered to the defendant, by a negro boy who was the property of Samuel J. Sellers, then the defendant is not guilty of the charge in the second count of the indictment—that of receiving stolen bacon knowing it to have been stolen;' which charge the court refused to give, and the defendant excepted."

The verdict of the jury, as set out in the judgment, was, that "they find the defendant guilty as charged in the second count of the indictment, to-wit, of receiving stolen goods knowing them to be stolen;" and the court thereupon sentenced the defendant to three years imprisonment in the penitentiary.

PUGH & BULLOCK, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra*.

R. W. WALKER, J.—1. We think that the verdict sufficiently responds to the indictment. There is an express finding that the defendant is guilty as charged in the second count. What follows was not, we think, intended as a qualification of the preceding part of the verdict, and as limiting the extent to which the defendant was guilty, but as descriptive of the count referred to. Verdicts are not construed strictly, as pleadings are. If the clear meaning of the jury can be collected from the finding, the court will mould the verdict into form, and make it serve. This is not a special, but a general ver-

dict, and "all circumstances which warrant the finding shall be intended. '—Nancy v. The State, 6 Ala. R. 483; People v. Caswell, 21 Wend. 86; State v. Fuller, 1 Bay, 245; Moody v. Keener, 2 Porter, 233; Noles v. State, 24 Ala. 694.

2. So far as the right to hold property is concerned, a slave is not regarded as a person; and whatever he accumulates by his own labor, or is otherwise acquired by him, becomes immediately the property of his master. Hence it is said, that the possession of property by a slave is, by construction of law, the possession of the master. Such, undoubtedly, is the rule where civil rights are involved. But, in the administration of the criminal law, a slave is not regarded merely as property. On the contrary, the courts recognize his existence as a person, his capacity for crime, and his subjection to criminal responsibility. Where a crime has been committed, either by or against a slave, the law, upon high ground of public policy, takes him out of the hands of his master, whose claims of ownership, and the rules of civil right dependent thereon, are for the time forgotten, and the slave becomes a person with well defined rights and liabilities, and is protected and punished as such.—1 Humph. 102. To hold that the rule, which considers a master as constructively in possession of property held by a slave, should be so extended as to absolve the latter from responsibility for crimes, would be a most dangerous perversion of legal principles. It is impossible to deny that a slave can do everything necessary to constitute larceny of his master's goods. He can take the property, without the consent, and against the will of the true owner, with the felonious intent to convert it to his own use. If he cannot commit larceny of his master's goods, neither can he be guilty of robbery as against him, nor of burglary as defined by section 3183 of the Code, if the house broken into belong to his master.

It is a clear rule of law, that where a party has only the bare charge and custody of the goods of another, the legal possession remains in the owner; and the party in custody may be guilty of trespass and larceny, in fraudu-

lently converting the same to his own use. And this rule appears to hold universally in the case of servants, whose possession of their master's goods is the possession of the master himself.—3 Waterman's Archbold, 443, and notes; 2 East's P. C. 566; 2 Bishop's Cr. L. § 730, &c.

There was no error in the refusal of the charge asked. The judgment is affirmed.