27 So.2d 492

## UNDERWOOD v. STATE.

### 3 Div. 448.

Supreme Court of Alabama.

July 25, 1946.

Rehearing Denied Oct. 24, 1946.

A. D. Redden, of Tallassee, and John A. Dickinson, of Prattville, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

GARDNER, Chief Justice.

The appeal is from a conviction for the offense of burglary in the first degree, as defined in Title 14, Sec. 85, Code.1940, with the infliction of the death penalty. Bass v State, 241 Ala. 342, 2 So.2d 783; Snead v. State, 242 Ala. 78, 5 So.2d 96.

The indictment contains several counts, some of which allege that the breaking and entry into the dwelling house was with intent to steal. Though there is some evidence indicating an intent to steal, yet it is clear enough the State rested for a conviction upon the theory the entry was made with the intent to rape, and the trial proceeded largely upon that theory. The evidence for the State tended to show that the house, owned and occupied by Mrs. India Rice, a widow 51 years of age, and living alone at 311 Wetumpka Street in Prattville, Alabama, was broken into and entered by cutting the window screen of the kitchen on each side where it was fastened by hooks, thus permitting the screen to be raised to such position as would permit the entry of a human being. The time of the alleged offense was fixed at about 11:30 on Sunday night, September 10, 1945. Mrs. Rice had visitors who remained until 10:45, and then she prepared to retire, taking a bath and coming to her bed in her nightgown.

Before reaching the bed, she turned out the light, which was at the doorway of the bedroom leading into the sleeping porch. The sleeping porch, which she was using as her bedroom, had eight windows, and the shades had been removed preparatory to painting. The furniture in all but the living room had been disarranged for the same purpose. There were three street lights within varying distances from this house, 120 to over 200 feet, one of which shone across the railroad track, which ran within a few feet of the sleeping porch. The evidence is to the effect that these street lights furnish sufficient light by means of which Mrs. Rice could identify some one, particularly on the sleeping porch. After getting in the bed she started to turn off the radio, which was on a stand between the bed and the doorway to the bedroom, and discovered a Negro man, whom she judged to be some two or three inches taller than herself, between 25 and 30 years of age, and weighing some 170 or 175 pounds. He was dressed only in one undergarment, known as a BVD type. Mrs. Rice herself weighed some 205 pounds, and evidently was a woman of poise and courage. Defendant is 29 years of age, weighing about 179 pounds.

The Negro told her he came there for the purpose of raping her. He put his right hand on her throat, with a knife in his left hand threatening to kill her if she made any outcry. She put up what might be well described as a game fight—trying to scratch his face, succeeding one time in pushing him away from her, and all the while insisting that he let her alone. He repeated that he intended to rape her. She was struggling as best she could with his arms around her, and at one time he bit her on the cheek. He also struck her in the eye, and her hand was slightly cut. Finally, however, he overpowered her and threw her back on the bed with her gown up and his body in contact with her person. In a manner not proper to be detailed in an opinion (though clearly set out in the record) this contact evidently gratified his passion, and after throwing the bedspread over her body and pillow over her head, with the admonition that she make no outcry, he left her without

a full accomplishment of his original purpose.

Mrs. Rice immediately telephoned the sheriff, who, within a few minutes, came to the house, and an investigation began, the details of which are here unnecessary to relate. Some 10 or 12 Negroes answering Mrs. Rice's general description were arrested and brought before her for identification. In each instance she promptly stated that her assailant was not among them.

Mrs. Rice is circuit clerk and also clerk of the local civil and criminal court at Prattville. Among those paying costs in her court she found the name of John Underwood, and asked the sheriff had he been contacted. John Underwood was brought before her, and she immediately identified him as her assailant. He had a peculiar haircut, closely clipped on the sides and neck, with much hair on top, called by the barber a "bonton" haircut.

When testifying as to the identity of this defendant she stated positively he was the person—she was definitely certain in her own mind—and she could not be shaken from this firm conviction. She remembered that he had paid some costs in cases in the courts in which she was clerk; and upon going in his presence when being fingerprinted, he appeared to be calm, and spoke to her, calling her by name. Defendant admitted on the stand having seen Mrs. Rice in the office, but did not know who she was. There were two abrasions on defendant's face, for which he offered explanations.

As a defense, defendant rested upon evidence tending to show an alibi. He had been for more than 10 years a resident of Prattville, and at this time lived some few houses below what is called the Blue Moon, a restaurant used exclusively by those of the colored race. This Blue Moon was some four or five blocks down the railroad track from Mrs. Rice's home. He had been riding around in the Prattville vicinity all that Sunday afternoon and into the night in the car owned by his friend, Charlie Scott. They had been drinking, though Mrs. Rice does not state that he was intoxicated at the particular hour of the attack. She appears not to have been interrogated upon that matter. Admitted-

ly he reached home at a very late hour this Sunday night, if, indeed, it was not just before dawn the following morning. And even during the night at some indefinite hour he waked his wife and asked her for a dollar, which he says she gave him. His alibi rested largely upon those with whom he had thus been spending the time in pleasure-seeking.

■ This appeal presents few questions here for consideration. There was a motion for a change of venue, but there was not the slightest evidence to sustain the motion. On the contrary, there were several affidavits offered by the State to show that there had been no demonstration whatever, and that the defendant could obtain a fair and impartial trial in that county. But in any event, in the absence of proof to sustain the motion, the court could not be put in error for denying it. Woodward Iron Co. v. Earley, 247 Ala. 556, 25 So.2d 267.

■ The trial court sustained the State's motion to strike defendant's demurrer to the indictment. The demurrer was filed after arraignment and after the plea of not guilty. The established rule is that a plea to the merits is an admission of a valid indictment. Jordan v. State, 241 Ala. 125, 1 So.2d 591, 133 A.L.R. 1335; Oakley v. State, 135 Ala. 15, 33 So. 23.

■ It may be added, however, that the demurrer interposed, as appearing on page 9 of the record, so clearly presents no valid objection to the indictment and is so manifestly without merit that in no event could the defendant have been in any manner prejudiced by the ruling.

■ This appeal is governed by what is commonly known as the automatic appeal statute, Title 15, Sec. 382(1) et seq., Cum. Pocket Part, Code 1940, under which it becomes the duty of this Court to examine the evidence and pass upon its sufficiency to support the verdict though no motion for a new trial is interposed. In discharge of this duty we have studied the record with much care, fully mindful of the responsibility involved. The identification by Mrs. Rice, who had ample opportunity for observation, is most positive, and the defendant's proof as to alibi is subject, we think, to much criticism. In any event, it is a clear case for the jury's determination, and we find no justification for disturbing the verdict rendered. The degree of punishment is by the statute left in the discretion of the jury and not with this Court. Evidently the jury took into consideration the harrowing experience of Mrs. Rice, the stubborn resistance which held the defendant off for a while, and the reason why, in their judgment, the intended rape was not fully accomplished.

■■ One other matter needs consideration. The jury brought in the following verdict: "We the jury find the defendant guilty as charged in the indictment and fix his punishment at death. P. E. Wyatt, Foreman." The trial judge was of the opinion the verdict should be slightly corrected so as to read: "We the jury find the defendant guilty of burglary in the first degree as charged in the indictment and fix his punishment at death." Each of the jurors agreed to the correction, and the jury at defendant's request was then polled, each juror, beginning with the foreman, rising to his feet and answering to the question as to whether or not that was his verdict: "Yes, Sir," and agreeing to the correction as suggested by the judge in the form of the verdict. To this correction there was interposed no objection.

We are of the opinion the verdict was sufficient as originally rendered. Wilson v. Federal Land Bank, 230 Ala. 75, 159 So. 493; Oxford v. State, 33 Ala. 416. But in any event, there was no error in having the verdict thus corrected. Barlew v. State, 5 Ala.App. 290, 57 So. 601, certiorari denied Ex parte Barlew, 181 Ala. 88, 61 So. 912; 18 Ala.Dig., Trial, ☞339(4), p. 914.

We find no reversible error in the record, and the judgment will accordingly be here affirmed.

Affirmed.

All the Justices concur.