30 So.2d 256

## TAYLOR v. STATE.

I Div. 279.

Supreme Court of Alabama.

April 24, 1947.

Sullivan, Holberg, Tully & Aldridge and H. M. Aldridge, all of Mobile, for appellant.

A. A. Carmichael, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

GARDNER, Chief Justice.

The appeal is from a judgment of conviction for rape with infliction of the death penalty. Defendant is of the colored race, a young man of about twenty years of age. The victim was a young white girl fourteen years of age.

Counsel appointed by the court for the defense has very diligently presented the questions raised in the record, both by oral argument and a full and complete brief.

██ As a foundation for the prosecution, of course, lies the proof of the corpus delicti, and it has been argued that the evidence was insufficient upon which to base the conclusion that the corpus delicti had been established. It is well understood that to sustain an indictment for rape, the act must have been forcible and against the consent of the person on whom the offense was committed—that force, actual or constructive is an essential element. Title 14, § 396, Code 1940; Dawkins v. State, 58 Ala. 376, 29 Am.Rep. 754. We are cited to McQuirk v. State, 84 Ala. 435, 4 So. 775, 5 Am.St. Rep. 381, to the effect that the consent given by prosecutrix may be implied as well as expressed, and the defendant would be justified in assuming the existence of such consent if the conduct of the prosecutrix toward him at the time of the occurrence was of such a nature as to create in his mind the honest and reasonable belief that she had consented by yielding her will freely to the commission of the act. Nevertheless this authority, also, is very careful to state that an acquiescence obtained by duress or fear of personal violence will avail nothing; the law regards such submission as no consent at all. If the mind of the woman is overpowered by a display of physical force, through threats, expressed or implied, or otherwise, or if she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man would be rape.

██ The authorities are also to the effect that where there is a reasonable inference deducible from the evidence of the existence of the corpus delicti, the court should submit the question of sufficiency and weight of the evidence tending to support that inference for the jury's consideration. De-Silvey v. State, 245 Ala. 163, 16 So.2d 183; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

There is no occasion to here set out the details of the crime. Whether the victim was frail or strong and well developed is not disclosed by the record, but, of course, was known to the jury who could observe both the man and the girl. The only thing here shown is the fact that she was a girl fourteen years of age and in the fifth grade at school. The alleged attack occurred between 8 and 9 o'clock at night when the victim went with a girl friend to the schoolhouse to attend a dance. She went out alone to the back of the building in the schoolyard to relieve herself. While there she discovered the defendant approaching. She immediately began to make her way, running, to the schoolhouse and was intercepted. Her evidence is to the effect that the defendant caught her as she was between the two buildings, that she screamed for help twice; that he had a knife with which her hand was slightly cut, and drew it on her and threatened if she screamed again he would kill her. After that she made no further outcry, though she begged him to let her alone. Her testimony is further to the effect that he then pushed her out into the weeds, which was some distance from the building; placed her on the ground and though she tried to push him back was unable to do so and defendant accomplished his purpose. She also testified that he still had the knife with him. It is her recollection that when he "took her down" on the ground that she kicked off her shoes, and he either removed

or made her remove some of her undergarments. She had never seen the defendant before and, from this record, the jury could reasonably infer her fearful reaction to having thus been so suddenly caught unawares.

Counsel seems to lay stress upon some inconsistencies in her statements, or the fact that she did not put up greater resistance or make further outcry. These questions, in light of her testimony, would go to the matter of credibility, but in no manner affect the question of the corpus delicti. To say that this was not established would be to ignore her testimony entirely. In view of this argument, it might be added that we think the jury could well consider the fact that this was a young girl caught unawares and alone at night and evidently much frightened. It could not be expected that she conduct herself entirely as an adult, or in such a way as calm afterthought might suggest.

If, as we have above observed, there is a reasonable inference deducible from this evidence that the corpus delicti had been established, the court should submit the question of sufficiency and the weight of the evidence tending to support that inference to the jury's consideration. De-Silvey v. State, supra. The proof is to the effect, undisputably, that immediately following the attack she ran back to the schoolhouse and made her complaint. She was there given some attention and carried to the hospital where she remained a short while. After the intervention of some three days she was examined by a physician, whose testimony was corroborative as to the assault and the damaged condition of her parts yet bleeding. There was a buckle or bow on one of her shoes. It was discovered near the spot where she had indicated, as well as one of her undergarments. Her dress and slip, removed from her at the hospital (there was proof tending to show the dress disclosed the effect of being on the ground and the slip had stains), were, also, before the jury, as well as a comb, ear or hair jewelry, shoe buckle, her shoes and undergarments, some of which, particularly, the ear or hair jewelry, a comb and shoe buckle, were found on the ground.

True, there seemed to have been no formal offering of these articles in evidence, but after they were exhibited before the jury and commented upon, to all intent and purposes they are considered as evidence in the cause. Kabase v. State, 31 Ala.App. 77, 12 So.2d 758; Kabase v. State, 244 Ala. 182, 12 So.2d 766.

There was, also, exhibited to the jury a shirt and some trousers of the defendant, which he had identified to the officers as his own and worn on that occasion. The trousers were examined by the toxicologist, who testified to discovery of blood stains, as well as semen stains, though the alleged crime had been committed some four months previously and the trousers had been washed. These were the trousers defendant wore on the night in question and, of course, this evidence was proper for the jury's consideration. Daniels v. State, 243 Ala. 675, 11 So.2d 756; Phillips v. State, supra. Nor can we find any prejudicial error in the exhibition of any of these articles as belonging to the victim. As to the victim's shoes, we are unable to see anything in their exhibition to the jury which was prejudicial to the defendant and, indeed, there is a connection in that she claims to have kicked them off and the buckle of one of the shoes was discovered on the ground. This also may be said as to the ear or hair jewelry and the comb. For what it is worth the jury could consider these matters upon the question of any struggle or rough treatment.

Counsel lays stress upon Kabase v. State, 31 Ala.App. 77, 12 So.2d 758, involving the conviction of Kabase upon the theory of a conspiracy existing between himself and Ellis, the real perpetrator of the crime, the defendant Kabase having in no manner harmed the victim. The matter of the exhibition of the shoes of the victim in that case and their sudden disappearance from the courtroom, as counsel for defendant desired to comment thereon, are treated at length in the opinion, and a careful study of that case will disclose that in fact it is wholly dissimilar from that here presented.

It appears that this defendant was arrested about 9 o'clock one night and while in jail sent word at 3 o'clock in the

morning that he wanted to talk to some one. Officers were present and he then made a confession that he was the guilty party. This was in July, the crime having been committed in the April previous. There was preliminary proof that no threats were made or inducement offered of any character. The rule, of course, is well established that prima facie confessions are involuntary and there must be evidence addressed to the trial judge rebutting the presumption showing prima facie that the confession was voluntarily made unless, of course, the circumstances attending the confession discloses its voluntary character. After the confession has been admitted the jury may consider the circumstances under which the confession was obtained, and the appliances by which it was elicited, including the situation and mutual relation of the parties, in exercising their exclusive prerogative of determining the credibility of the evidence, or the weight to which it is properly entitled in controlling the formation of the verdict. Johnson v. State, 242 Ala. 278, 5 So.2d 632.

It appears that after this crime was committed another colored man by the name of Brooks was arrested and given a preliminary hearing. He was allowed bail. Much stress is laid upon the fact that the prosecutrix had identified Brooks as her assailant. The evidence is now to the effect that this was a mistake and that this defendant was the man. One of the differences between the two that prosecutrix now discovers was that Brooks' teeth were rather wide apart and a difference in their height.

The defendant made another confession before the Mayor of Prichard and others, in which he answered in detail the numerous questions asked by the solicitor. This confession, also, was preceded by proof that it was of a voluntary character. To this particular confession the solicitor had written down the questions and the answers and from the record thus made he asked the witness whether or not he heard the defendant answer the questions in that manner and without offering the writing in evidence. To this counsel makes serious objection. But we are unable to see where he was prejudiced by this method of examination of the witness.

Another confession was before the assistant solicitor who went out in a police car to the grounds, accompanied by the defendant and two officers, and a rough sketch or diagram of the grounds at the schoolhouse where the alleged crime occurred was made by the defendant in his own hand. This confession was signed and offered in evidence. There is nothing in the record to indicate in the slightest any threat or offer of reward or inducement of any character for the defendant to have thus disclosed the full crime. To use the expression of one of the witnesses, "he said he merely wanted to get it off his chest."

The fact that the prosecutrix had mistakenly identified another man (Brooks) previously, would perhaps be of some consequence if there were proof offered by the defendant which would tend to establish his innocence. But there was no such proof. Defendant exercised his privilege not to take the stand, and offered no evidence of an alibi or as to his whereabouts on this night. Some two witnesses who had worked with him testified to his general good character. His other witnesses were merely to emphasize the fact the prosecutrix had previously and positively identified another person as her assailant.

Not only did the prosecutrix on the trial identify the defendant, but the proof is undisputed that the prosecutrix with three other women standing side by side were observed through a venetian blind, defendant and others on the outside looking in, and that the defendant pointed out the prosecutrix as the girl whom he had assaulted.

Upon the question of the refused charges little need be said. They were either properly refused as misleading or erroneous, or if proper were covered by both the oral charge of the court and the numerous charges given for the defendant. Counsel lays little stress upon the refused charges, and we think this action of the court in refusing these charges needs no further comment here.

The venire for the trial of this defendant consisted of one hundred jurors. Defendant lays much stress upon his motion for quashing the venire based, as appears from the averments of his motion, upon a

charge that the court, through the clerk's office, instructed any prospective juror who desired to be excused from service in the trial of this case that he should first see the attorney for the defendant and if such attorney so consented his request would be granted. There is, of course, no pretense of any order of the court in that respect. Clearly any such order would be erroneous as it is the duty of the court to hear all the excuses and himself pass upon the same. Title 30, § 38, Code of 1940; O'Rear v. State, 188 Ala. 71, 66 So. 81. No such responsibility could, of course, be shifted to the shoulders of the counsel for the defense. The movant has stated in his motion there were some ten jurors who applied to defendant's counsel to be excused, of which number three such requests were by him granted. But as to the remaining number he declined to take that responsibility. The argument in support of the motion is rested upon the theory that the denial of such requests by the attorney would perhaps unconsciously prejudice the juror against him. Aside from the method pursued in raising the question (motion to quash the venire) there is an insuperable obstacle to its consideration on the merits. Following the cases of Taylor v. Corley, 113 Ala. 580, 21 So. 404, and Busenlehner v. Parsons, 226 Ala. 548, 147 So. 633, this court in Woodward Iron Co. v. Earley, 247 Ala. 556, 25 So.2d 267, held that the mere recital of certain facts in a motion with nothing by way of verification is insufficient as disclosing what in fact did occur on the trial. In each of these cases a motion for a new trial was involved, and the holding was that the mere recitals of evidence and rulings thereon in such a motion with nothing to give verity to such recitals cannot be held sufficient to disclose what in fact did occur on the trial.

Here we have a motion with the mere recital of the facts as above outlined. As we have observed there were a few jurors whose excuse from jury service was not consented to by defendant's counsel, but for aught appearing these jurors had in fact a valid excuse and were in fact excused by the court as authorized by Sections 4 and 5, Title 30, Code of 1940, or were exempt from jury service under Section 3 of said Code title. Upon these matters we are not informed by the record. And even excusing veniremen before the date of trial is not reversible error in the absence of objection to selection of jury because of this excuse. Stinson v. State, 223 Ala. 327, 135 So. 571. There is here no such objection, nor was there objection to going to trial because of the matter of which complaint is now made. Smallwood v. State, 235 Ala. 425, 179 So. 217. There was nothing wrong with the venire. Title 30, § 46, Code 1940. For these reasons, therefore, we think it readily apparent that defendant can take nothing by the ruling on his motion to quash.

Mindful of our duty in cases of this character and fully conscious of our responsibility, we have examined the record with care and studied it in the light of the forceful argument of counsel for the defendant. We are unable to find, however, any error upon which the judgment of conviction should be reversed. An order of affirmance is, therefore, due to be entered.

Affirmed.

All the Justices concur.