83 So.2d 737

Steve HUNTER

v.

STATE.

6 Div. 914.

Court of Appeals of Alabama.

Nov. 22, 1955.

Rogers, Howard & Redden and J. Edmund Odum, Birmingham, for appellant.

John Patterson, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

354

PRICE, Judge.

Appellant was convicted of the offense of an assault with intent to rob, and was sentenced to fifteen years imprisonment in the penitentiary.

Before arraignment the defendant moved for a change of venue, resting his right in the application upon the newspaper publicity given his alleged offense; asserting in such newspaper articles it was wildly proclaimed that the defendant had admitted the crime; that defendant was indicted two days after he was placed in jail and his case was first set for trial only seven days after the indictment; that for the reasons stated in the application the minds of the citizens and prospective jurors of Jefferson County were so inflamed against him that it would be impossible for him to secure a fair and impartial trial within the county.

Defendant introduced no affidavit or other evidence in support of his application, nor did he introduce the newspaper articles referred to therein.

■ "The burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot reasonably be expected, in order to achieve the right to a change of venue." Patton v. State, 246 Ala. 639, 21 So.2d 844, 845; Maund v. State, 254 Ala. 452, 48 So.2d 553; Godau v. State, 179 Ala. 27, 60 So. 908.

■ In the absence of proof to sustain the motion, the court will not be put in error for having denied it, though no contrary affidavits were filed by the State. Underwood v. State, 248 Ala. 308, 27 So.2d 492.

The evidence for the State tends to show that Mr. Pierce, the operator of a filling station at the intersection of 14th Street and Avenue F, Birmingham, observed a man alighting from a black convertible automobile around eleven-thirty on the night of October 23, 1953. This man, masked and armed with a pistol, entered the station and announced "this is a stick-up," or "this is a hold-up." During the struggle which followed between the man and Mr. Pierce, the station was considerably disarranged; a large plate glass window was broken and one or more shots were fired from the pistol, which Mr. Pierce succeeded in wresting from his assailant. The man ran to the waiting automobile and escaped. Mr. Pierce did not see the driver of the car.

Hobart Wear testified he saw the automobile stop at the intersection of Fourteenth Street and saw the masked man get out of it and run into the filling station. He saw the altercation between this man and Mr. Pierce, and he wrote down the license number of the automobile in which the masked individual left the scene.

Police Officer Lakey testified he broadcast to Police Headquarters an automobile license number given to him by some person in the course of his investigation at the filling station.

Police Officer Parker identified the pistol introduced in evidence as one he had loaned to Paul Beddow on October 12th.

Acting Police Captain Lance testified he heard a radio report that appellant's car had been reported as stolen and that one Gus Vlahos was found driving the automobile.

John J. Patino, a City Detective of San Antonio, Texas, identified a written confession, signed by defendant and concurred in by Beddow, as having been made at his office in San Antonio on October 27, 1953.

In the confession, which is in evidence, defendant admitted that he and Paul Beddow, after drinking beer together for several hours, decided to rob the filling station to get money to finance a proposed western trip. He also stated that Beddow was the

masked individual who entered the station and that defendant was the driver of the automobile, which belonged to Beddow. After the flight from the station defendant reported his automobile, as well as the pistol used in the attempted robbery, as having been stolen. Beddow and defendant left Birmingham immediately and were apprehended by the San Antonio police the following Sunday afternoon.

Testifying in his own behalf, defendant denied any knowledge of or any part in any plot or scheme to rob Mr. Pierce or anyone else. He stated that he and Beddow had been drinking continuously and riding around for several hours, and Beddow said, "Stop here and let me out and drive around the corner." The next thing defendant remembered was hearing a shot and breaking glass and seeing Beddow running to the car. He testified he was placed in the drunk cell of the San Antonio jail on Sunday. The following Tuesday morning he was questioned for an hour, then he was placed in a small cell for about six hours after which he was taken back upstairs and was told that Beddow had made a statement. Beddow, sent in to talk to defendant alone, stated to him that the officers had said if they didn't confess a charge of assault with intent to murder would be placed against them. He stated Lieutenant Evans, of the Birmingham police department, confirmed Beddow's statement that if they would confess no additional charges would be placed against them, that they would be allowed reasonable bond and the police department would not oppose probation, and that Captain Walker when informed of the statement by Lieutenant Evans, said "Yes, I will agree to that. I will go along with whatever you say, Lieutenant."

 It is complained that the trial court erred in admitting into evidence the confession of defendant, over objection and exception, and in overruling appellant's motion to exclude the State's evidence "on the ground that there wasn't a voluntary statement."

As a condition precedent to the admission of the confession, its voluntary character was shown by the testimony of officer Patino, to the effect that before the statement was made, neither the witness, nor anyone in his presence or hearing, abused the defendant in any manner, or offered him any inducement or hope of reward to get him to make the statement, or tell him it would be better for him to make a statement or worse for him if he did not make it. This was sufficient predicate for its admission, Ray v. State, 29 Ala.App. 382, 197 So. 70, certiorari denied 240 Ala. 73, 197 So. 73; Rutland v. State, 31 Ala.App. 43, 11 So.2d 768; Arrington v. State, 253 Ala. 178, 43 So.2d 644, and Patino's statement on cross-examination that he didn't know whether or not any inducements were made to defendant before the witness arrived does not tend to controvert his testimony on direct examination as to the absence of circumstances which would render the statement involuntary. Bettis v. State, 160 Ala. 3, 49 So. 781.

It is argued in brief that the court should have excluded the confession from the jury's consideration because subsequent to its admission it was shown by the testimony of State's witness Police Captain Walker, the defendant and that of his witness, Lieutenant Evans, that the confession was obtained by threats or promises.

Captain Walker testified no inducements or hope of reward was offered defendant and that he was not threatened, abused or mistreated in any manner by the witness nor by anyone in his presence or hearing. On cross-examination Captain Walker stated he did not tell Lieutenant Evans in the presence of defendant that there was pending against defendant a charge of assault with intent to murder or that such a charge could be added, but that if defendant would sign the confession witness would see that no other charges were added, and Lieutenant Evans did not make any such statement to defendant in witness' presence. He stated that he did tell defendant some women were missing and if they were found harmed defendant would face additional charges. He also testified he did not say that he would not oppose probation or would see that defendant was allowed reasonable bond if he signed the confession.

We do not agree with appellant's contention that the following questions and answers on cross-examination of this witness show that his testimony as to inducements held out to defendant was hazy and equivocal to such an extent as to cause the court to harbor doubt concerning the voluntary nature of the confession:

"Q. Did you have any discussion at all about some additional charges? A. There was something stated about some charges, but we didn't have any other charge.

"Q. Who stated about these other charges? A. I don't recall what was stated about them at that time.

"Q. Well, do you know who stated it? A. Well, no, sir, I wouldn't say.

\* \* \* \* \* \*

"Q. Did you have any conversation with him about any additional charges being placed against this man or the other man? A. The only charges that we had was attempted robbery.

"Q. I see. I understand that, but there was some mention about assault with intent to murder, was there not? A. I don't recall it, no. What time?

"Q. Can you say, Captain Walker, that you made no mention of assault with intent to murder being added against this man or the other man? A. I don't recall I did.

\* \* \* \* \* \*

"Q. Was there any mention about a reasonable bond being fixed if he would sign a confession? A. I said something about it. I told him it was up to the courts and the Solicitor's office about probation and bond.

"Q. You told him you wouldn't oppose it? A. I didn't tell him anything.

"Q. You didn't tell him anything? A. No, sir.

"Q. Did Lieutenant Evans tell him he would not oppose probation? A. I don't know whether he did, or not. There was no reason to tell him that.

"Q. Did you have any conversation between you and this boy, Mr. Hunter, between you and him, in which you discussed these inducements? A. The only time I talked to him was in Beddow's presence.

"Q. Did you ask Lieutenant Evans to go in and talk with this man? A. I don't recall telling him to go in and talk to him.

"Q. Will you state whether this is a fact, or not, that Lieutenant Evans walked in the room with Steve Hunter and asked you if you would go along with this, that no additional charges would be brought if he would sign a confession? Did you say, 'I will go along with you?' A. In Steve Hunter's presence?

"Q. Yes, sir. A. No, sir, I didn't say that.

"Q. On whatever— A. Go alongwith him on his attempted robbery.

"Q. I see. You would go along with him on what, sir? A. Attempted robbery.

"Q. What did you mean, you would go along with him? A. That was the only charge we had against him.

\* \* \* \* \* \*

"Q. Who made the alleged confession, Mr. Beddow or Mr. Hunter? A. Both of them was together, I think.

"Q. What do you mean by that, Captain Walker? You mean they talked at the same time? A. They were both present when it was discussed, yes, sir.

"Q. And who did the talking? A. Both of them talked.

\* \* \* \* \* \*

"Q. Now, to get back to this alleged confession, you stated they made it together. Will you state whether or not Officer Beddow made his confession first or Steve Hunter made his confession first? A. I think Beddow made his first."

Lieutenant Evans, called as a witness for defendant, testified he did not offer the defendant any inducement or hope of reward to get him to make the confession. He stated that he did tell defendant he would

see to it personally that no other charges were placed against Mr. Beddow and the defendant, but this statement was not made in connection with the confession, and he did not tell defendant if he would sign the confession no other charges would be preferred against him.

In Vernon v. State, 239 Ala. 593, 196 So. 96, 100, it was stated:

"Extrajudicial confessions of guilt by an accused on trial for crime are prima facie involuntary, and the burden rests upon the state to overcome this prima facie infirmity by evidence satisfactory to the court trying the case that the confession was voluntarily made, before such confession can be received in evidence. It is the right of the accused to controvert evidence offered in laying such predicate by cross-examination, or by evidence aliunde, but such countervailing evidence impeaching the predicate to be successful must be offered on the voir dire, before the confession is admitted. Lockett v. State, 218 Ala. 40, 117 So. 457; Cook v. State, 16 Ala.App. 390, 78 So. 306; Pope v. State, 183 Ala. 61, 63 So. 71; Jackson v. State, 83 Ala. 76, 3 So. 847.

"If such countervailing evidence is not offered until after the preliminary question of the admissibility of the confession is passed on by the court it goes to the jury on the credibility of the confession only. Lockett v. State, supra; Cook v. State, supra.

"When the evidence going to show that such confession was voluntary is conflicting and the trial court holds that it was voluntary, such holding is entitled to great weight on appeal, not to be disturbed unless such holding is palpably contrary to the weight of the evidence. Pope v. State, supra; Harwell v. State, 12 Ala.App. 265, 68 So. 500; Cook v. State, supra."

The evidence as to the circumstances under which the confession was made, which defendant contends establishes its involuntary character, was not offered on voir dire, but was presented after the preliminary question as to the admissibility of the confession had been passed on by the court. It was, therefore, proper for the jury's con-sideration in determining the weight and credibility to which in their judgment the confession was entitled, but we do not regard it as being sufficient to justify the exclusion of the confession from the evidence. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Rutland v. State, 31 Ala.App. 43, 11 So.2d 768.

██ In brief counsel complains that a witness for the State, Police Lt. J. C. Lance, began to testify concerning a stolen car complaint that he heard over the radio in his automobile, and defense counsel objected on the ground that such testimony was hearsay. A continuing effort was made to secure testimony concerning this complaint and the action taken by the officer as a result of it, until the court ruled that the testimony was not properly connected and the witness was withdrawn from the stand. Following the introduction of the purported confession of appellant the witness was recalled. The following transpired:

"Q. Did you receive a complaint over the radio with reference to a stolen car? A. Yes, sir.

"Q. And what name was given? A. Steve Hunter.

"Q. Did they give the address? A. Yes, sir.

"Q. What address? A. 806, I believe it was, South Twenty-first Street.

"Q. Now, did you get a description of the car? A. Yes, sir.

"Mr. Odum: We are going to object to going into any more detail, Judge; that is all heresay; It was done outside of the presence and hearing of this defendant; it was over the radio.

"The Court: If he received it over the radio—

"Mr. McCall: I call attention to the fact here in this statement the defendant stated he did call the police and report his car stolen.

"The Court: Yes. I am going to let it in.

"Mr. Odum: We except."

No proper objection was taken and no definite ruling of the trial court was made when the witness was first on the stand.

·It will be noted· that the objection to the testimony set out above was made after the questions were answered, and came too late. 6A Ala.Dig., Criminal Law, ☞693.

Moreover, since the testimony was first admitted by this witness without objection, and the defendant admitted the fact sought to be elicited in his confession and on cross-examination to the question: "Q. Well, all right, you called the police, didn't you, and reported your car stolen, didn't you?" he replied: "A. I must have, yes, sir," the admission of such testimony, if the objection had met the required rule, was not prejudicial error so as to affect the defendant's substantial rights. Supreme Court Rule 45, Code 1940, Title 7 Appendix; Alston v. State, 248 Ala. 163, 26 So.2d 877.

■ It is complained that the court erred in admitting this testimony of Luther Parker:

"Q. I will ask you to state—Have you look at State's Exhibit 'A' (indicating) and ask you what that is? A. That is a pistol; it is a .32 Colt's Detective Special.

"Q. Is that your pistol? A. Yes, sir.

"Q. Now, when did you see this pistol last prior to October 23, 1953?

"Mr. Odum: We object to that; irrelevant and immaterial, not a part of the res gestae; doesn't tend to prove or disprove any fact in issue.

"The Court: Overruled.

"Mr. Odum: We except.

"A. I believe it was October 12th, about seven-thirty in the morning.

"Q. Who did you let have that pistol?

"Mr. Odum: We object to that; irrelevant, immaterial,—

"The Court: Overruled.

"Mr. Odum: We except.

"A. Paul Beddow."

Any testimony tending reasonably to establish the probability or improbability of the fact in controversy is admissible in evidence. Holland v. State, 25 Ala.App. 147, 142 So. 112; Harrison v. State, 235 Ala. 1, 178 So. 458.

This evidence was admissible as tending to identify, as defendant's co-conspirator, the masked individual in possession of the pistol used in the commission of the crime.

■ One of the principal insistences of error upon this appeal is that the trial court in its oral charge incorrectly instructed the jury as to the law relating to malice, in this respect:

"Malice is an essential element of the offense of assault with intent to rob, as stated. Likewise, an intent is an initial element of an assault with intent to rob. Neither malice nor intent to rob are elements of the three lesser offenses of assault, assault and battery, or an attempt to commit an assault with intent to rob. Those are the three lesser offenses.

"Now, gentlemen, malice may be presumed from the use of a deadly weapon, and the burden is cast upon the defendant of repelling that presumption unless the evidence which shows the killing—this is not a killing—that shows an assault with intent to rob unless the evidence which shows the offense—I will put it that way—shows, also, that it was done without malice or unless such presumption of malice is overcome by all the evidence in the case.—

\* \* \* \* \* \*

"The Court: Any exceptions?

"Mr. Odum: No exceptions, Judge, except the charge on malice. I except to the charge on malice.

"The Court: Well, that is a part of the case, that is on the greater offense, not on the lesser offense, malice, of course, is included."

We cannot accord merit to appellant's insistence. The attempted exception was descriptive or by reference merely. The well-settled rule does not permit an exception by designation of a subject treated by the court in its oral charge to the jury. McGhee v. State, 178 Ala. 4, 59 So. 573; Beech v. State, 205 Ala. 342, 87 So. 573; Corder v. State, 32 Ala.App. 584, 28 So.2d 651; Henderson v. State, 34 Ala.App. 554,

42 So.2d 475; Head v. State, 35 Ala.App. 71, 44 So.2d 441.

Requested charge 8 is misleading and argumentative and was properly refused.

Requested charge 19 was also properly refused. Its effect was to refer to the jury the question of the admissibility of the alleged confession. Scott v. State, 211 Ala. 270, 100 So. 211; McKinney v. State, 134 Ala. 134, 32 So. 726; Rice v. State, 204 Ala. 104, 85 So. 437.

We are clear to the conclusion that under the evidence presented the court properly refused the general affirmative charge, requested by defendant. The evidence was ample to sustain the verdict of the jury and to support the judgment of conviction pronounced and entered. The motion for a new trial was also properly overruled.

There being no reversible error in the record, the judgment of conviction is ordered affirmed.

Affirmed.