176 So.2d 872

**Ned WELCH**

v.

**STATE.**

**7 Div. 678.**

Supreme Court of Alabama.

June 30, 1965.

Ned Welch, pro se.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

On 20 February 1959, Ned Welch was convicted of robbery in the Circuit Court of Talladega County and sentenced to thirty-five years imprisonment in the penitentiary.

An appeal was taken to this court, and on motion of the Attorney General the transcript of the evidence was stricken because not timely filed in the Circuit Court and the cause was affirmed on the record proper.

It also appears that after the submission of the cause in this court, counsel for appellant filed a petition for certiorari to perfect the record in order that the same might show the motion for a new trial was filed within thirty days, rather than more than thirty days as shown by the record. This petition was stricken on motion of the Attorney General for the reason that should the motion be granted, and the record show that the motion for a new trial was filed within thirty days, the record would fail to show that the motion for a new trial was presented to the trial court and an order entered thereon within thirty days. The petition for certiorari failing to show that this defect would be cured by certiorari, the court concluded that the granting of the petition in such situation would be useless. Welch v. State, 271 Ala. 199, 123 So.2d 205.

Welch has filed in this court a document which he has designated as a motion for leave to file "Error Coram Nobis" proceedings.

In this document Welch asserts that since his appeal was reviewed only on the record proper, the merits of his case were never adjudicated. He further asserts that after his arrest and during the entire prosecution he was in prison either in the Talladega County jail or in Kilby prison; that after his conviction he paid to his lawyer $1,350 to meet the expenses of an appeal, and that

he has an itemized expense account from his attorney showing the payment of $317.00 for a transcript of evidence; that he also has numerous letters from his attorney assuring him that the appeal was being prepared and perfected. He also asserts that due to the negligence of his attorney, and his abandonment by him, he was in truth and in fact without representation on his appeal, and for this reason was deprived of due process of law under the Constitution of Alabama and the United States Constitution.

This matter presents an unique situation. We have therefore, out of an abundance of caution, reviewed the record in this case to insure the petitioner that none of his constitutional rights have been violated.

The record shows that in the trial below the evidence presented by the state tends to show that Charlie Coleman Moore and his wife were in the living room of their home watching television on the night of 20 February 1958. Two lights were burning in the living room and the porch light was burning. About nine o'clock there was a knock on the door and Moore opened the door and a man walked in. Moore told him, "Fellow, I don't believe I know you," and the man answered, "Hell no, you don't know me," at which time the man struck Moore a severe blow in his face. With a drawn pistol the man made Moore and his wife get down on the floor, and at this time a second man entered the room. Moore was forced to go into another room and open up a safe. Thereafter he and his wife were bound and in a few moments the two men left.

Altogether about $1,100 in cash was taken from Moore, plus a fourteen carat yellow gold ring, watch, and a pistol.

After the men left Moore and his wife were able to unbind themselves and they went to their son's house about a quarter of a mile away where they summoned the police.

In July of 1958, Moore and his wife went to the county jail where they identified Welch as being the man who had first entered their home on the night of the robbery.

Mrs. Moore's testimony was largely corroborative of that given by her husband. The state presented additional evidence tending to show that a motel registration card bearing the name "D. C. Martin" and bearing the date of 18 November 1958, was in the handwriting of Welch. The proprietor of the motel testified that the man who signed the registration card actually came into the motel on the morning of 19 February 1958, at about 6 A.M., and was accompanied by another man. The two men left about 3 P.M., of the 19th but returned about 5 P.M., and asked for and were given the same unit they had occupied. They checked out the following morning about 9:30 and drove away in an Oldsmobile automobile with a Tennessee tag.

Other witnesses presented by the state identified Welch as having been the man they saw in and around Sylacauga on 20 January 1958.

During the trial Mr. and Mrs. Martin again positively identified Welch as being the man who first entered their home and perpetrated the robbery upon them.

The evidence presented by the defense was directed toward establishing an alibi.

All in all the contradictions in the evidence presented merely a question of fact within the province of the jury to resolve.

While the record of the trial is rather voluminous, the court's rulings were invoked only a relatively few times. In practically every instance the court ruled with the defendant, and in the remaining instances his rulings were so palpably correct as to require no discussion.

In the motion for a new trial the only material evidence presented went to the ground that one of the jurors who served

on the Welch jury had made a statement prior to the trial to the effect that Welch's companion in the robbery had pled guilty and gotten a ten year sentence; that he was going to be on the jury to try Welch and was going to throw the book at him and give him a hundred years if he could.

In an effort to support this allegation, Welch presented two witnesses, J. N. Thompson, and J. H. Teal. Teal is a roofer, and Thompson was unemployed. They testified that about the middle of February 1958, they went into the Sherwin-Williams store in Sylacauga. It was Teal's habit to go into the store regularly hunting for roofing business and Teal stated that he went into the store frequently. On the day in question, J. S. Strain, who is a painter, and who served on the Welch jury, and two or three other painters, and two or three employees of the store were present. It was at this time that they allegedly heard Strain make the remark above set forth.

In rebuttal, Hugh L. Atkinson, manager of the Sherwin-Williams store in Sylacauga, testified that he did not know either Teal or Thompson and does not remember ever having seen either of the men answering their description in the Sherwin-Williams store, that Sherwin-Williams sells paints and not roofing material. Atkinson further testified that it is the custom of painters in Sylacauga to come into the Sherwin-Williams store frequently in order to find out what painting jobs are going on. J. S. Strain, who is a painter, frequently comes into the Sherwin-Williams store, and they are friends. On one occasion in February, Mr. Strain had told Atkinson that he would not be in for a few days as he was summoned to serve on a petit jury in Talladega. He asked what a petit jury was and Atkinson informed him he thought a petit jury tried only civil cases. This was their entire conversation as to Strain's jury duty, and the Welch case was not mentioned.

J. S. Strain denied unequivocally that he had ever made any such statement as attributed to him by Teal and Thompson; that he did have the conversation with Atkinson as to what a petit jury was and he thought until he got to Talladega that he was going to serve in civil cases. He and Atkinson laughed about the matter afterward.

Mr. Strain further testified that his verdict in the Welch case was based solely on the evidence presented and that he had no fixed opinion prior to the trial, and in fact knew nothing about the Welch case until he heard the evidence presented.

■ Again this contradictory testimony raised a question solely within the province of the court to resolve after hearing the evidence presented on the motion for a new trial. The court's conclusions are amply supported by the evidence presented by the state and certainly no grounds for disturbing these conclusions are made evident.

In the original appeal counsel for appellant also argue that the court erred in overruling an objection to the following argument made by the solicitor to the jury:

"Now, it is conceded here, and apparently from the * * * there is no evidence that Mr. Welch is a citizen of this particular county."

Counsel for appellant contends that this was a comment on the failure of the defendant to testify.

Several witnesses offered by the state testified that when they observed the defendant in and around Sylacauga he was driving or riding in an automobile bearing Tennessee license plates. The defendant's alibi evidence tended to show that he was in Georgia at the time of the robbery.

■ Prior to the above statement, the solicitor had noted the ease with which persons could go to communities wherein they were unknown and with fast automobiles be many miles from the scene of a

·crime within a few hours. The comment of the solicitor objected to as set out above was in our opinion merely a comment deducible from the evidence presented by the state, and the strength of the state's evidence. Such comment is permissible. Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565.

From our examination of the record we are clear to the conclusion that no error probably injurious to the appellant's substantial rights infected the record, and the judgment was due to be affirmed on the merits of the case, as well as upon the grounds upon which the judgment was originally affirmed.

In his document the appellant asserts that he was not present in court on 16 February 1959, when several prospective jurors who were members of the special venire empaneled to try his case were excused by the trial judge.

No objection was taken in the trial below as to the venire. This matter cannot be raised for the first time on appeal, Taylor v. State, 249 Ala. 130, 30 So.2d 256; Davis v. State, 229 Ala. 674, 159 So. 209; Hollander v. State, 27 Ala.App. 454, 173 So. 891, and must now be considered as waived in the absence of any objection prior to trial, Welch conceding that his attorney who represented him below was in everywise competent except in the matter of perfecting the appeal.

Other matters are asserted by Welch in his document. They are so palpably without merit that we forego a discussion of them. All in all, it is clear that under any construction of Welch's allegations in his document, he is not entitled to any relief. We therefore deny his petition for leave to file a writ of error coram nobis.

Petition denied.

.All the Justices concur.